IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KLUBER SKAHAN & ASSOCIATES, INC., an Illinois corporation,<br><br>    Plaintiff/Counterdefendant,<br><br>v.<br><br>CORDOGAN, CLARK & ASSOC., INC., an Illinois corporation, and JEYEONG KIM, an individual,<br><br>    Defendants/Counterplaintiffs. | No. 08-C-1529<br><br>Judge Zagel<br><br>Magistrate Judge Nolan<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO COUNT I
OF PLAINTIFF'S SECOND AMENDED COMPLAINT, AND COUNTERCLAIM**

As for their Answer and Affirmative Defenses to Count I of Plaintiff/Counterdefendant Kluber Skahan & Associates, Inc.'s ("KS+A") Second Amended Complaint, and Counterclaim against KS+A, Defendants/Counterplaintiffs Cordogan, Clark & Associates, Inc. ("CCA") and Jeyeong Kim ("Mr. Kim") (referred to together as "Defendants") state as follows:

**PRELIMINARY STATEMENT**

Defendants are contemporaneously filing a motion to dismiss Counts II though VII of KS+A's Second Amended Complaint, and therefore no answer is being made with respect to these counts. Defendants are also moving to dismiss the portion of Count I of KS+A's copyright infringement claim in Count I that arises from KS+A's Electrical Standards Drawings, Project Plans, Symbols & Abbreviations, and Electrical Standards Library because the Court lacks subject matter jurisdiction over these claims. CCA and Mr. Kim are answering the portion of KS+A's copyright infringement claim that arises from KS+A's Specification Sections. Because the allegations contained within KS+A's copyright infringement claim do not clearly delineate

the allegations with respect to each separate class of copyright comprising the KS+A Copyrighted Works, Defendants are answering Count I in its entirety.  Defendants' answer of Count I in its entirety is not intended to waive its right to move to dismiss pursuant to Federal Rule 12(b)(1) that portion of Count I for which the Court lacks subject matter jurisdiction.

## NATURE OF ACTION

**ALLEGATION NO. 1:**

This action results from the Defendants' willful conduct in violation of KS+A's rights under U.S. federal law and Illinois state and common law.

**ANSWER:**

Defendants deny the allegations in Paragraph No. 1.

**ALLEGATION NO. 2:**

KS+A brings this action pursuant to 17 U.S.C. § 501, et seq., for copyright infringement and pursuant to 18 U.S.C. § 1030, et seq., for violation of the Computer Fraud & Abuse Act. KS+A seeks equitable relief and recovery of damages, attorneys fees and costs.

**ANSWER:**

Defendants admit that KS+A has made allegations in Paragraph No. 2 against Defendants based on the listed federal statutes, but deny that these statutes have been violated by CCA or Mr. Kim.

**ALLEGATION NO. 3:**

KS+A further brings these pendant, state law actions, pursuant to 815 ILCS § 505, et seq., for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 510, et seq., for violation of the Uniform Deceptive Trade Practices Act, and for common law unfair competition, breach of contract and tortious interference with contractual relations. KS+A seeks equitable relief and to recover damages, attorneys' fees, punitive damages and costs.

CHICAGO/#1858483

**ANSWER:**

Defendants admit that KS+A has made allegations in Paragraph No. 3 against Defendants based on the listed state statutes and common law causes of action, but deny that these state statutes or common law causes of action have been violated by CCA or Mr. Kim.

## THE PARTIES

**ALLEGATION NO. 4:**

Plaintiff KS+A is an Illinois corporation and is a licensed professional design firm engaged in the practice of architecture and engineering, with its principal place of business at 901 N. Batavia Avenue, Batavia, Illinois 60510. KS+A and its predecessor companies have been offering high quality engineering services for the last twenty years, and KS+A has been offering high quality professional design services (both engineering and architecture) for the last thirteen years. KS+A employs both architects and engineers licensed by the State of Illinois. One of the founders of KS+A is Michael T. Kluber ("Mr. Kluber"). Mr. Kluber is and has been at all relevant times a professional engineer licensed by the State of Illinois.

**ANSWER:**

Mr. Kim admits that KS+A is a professional design firm engaged in the practice of architecture and engineering with its principal place of business at 901 N. Batavia Avenue, Batavia, Illinois 60510. Mr. Kim further admits that KS+A was founded by Michael T. Kluber, that Mr. Kluber is a licensed engineer, and that KS+A employs licensed architects and engineers. Mr. Kim is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 4 and therefore denies these allegations. CCA is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 4 and therefore denies these allegations.

**ALLEGATION NO. 5:**

Defendant Cordogan is an Illinois corporation and a licensed professional design firm engaged in the practice of architecture, with its principal place of business at 960 Ridgeway Avenue, Aurora, Illinois 60506.

**ANSWER:**

Defendants admit the allegations in Paragraph No. 5.

**ALLEGATION NO. 6:**

Defendant Mr. Kim is an individual and was, from April 15, 2002, through April 12, 2004, employed at KS+A as an engineering intern. During his period of employment at KS+A, Mr. Kim was not at any time a professional engineer licensed by the State of Illinois. Upon information and belief, Mr. Kim became an employee of Cordogan on or before April 5, 2004, and in December 2004, Mr. Kim became a licensed professional engineer in the State of Illinois. Upon information and belief, Mr. Kim has left the employ of Cordogan and is now employed by a third party in Aurora, Illinois. Upon information and belief, Mr. Kim lives in Kane County, Illinois.

**ANSWER:**

CCA is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence in Paragraph No. 6 and therefore denies these allegations. Mr. Kim admits that he was employed by KS+A as of April 15, 2002, but denies that he was employed by KS+A through Monday, April 12, 2004. Rather, Mr. Kim avers that his last day of employment at KS+A was on Friday, April 2, 2004. Defendants admit that Mr. Kim became an employee of CCA on April 5, 2004. Defendants admit the remaining allegations in Paragraph No. 6.

**JURISDICTION AND VENUE**

**ALLEGATION NO. 7:**

This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1338(a) & 1331. This Court has supplemental jurisdiction over KS+A's state law claims pursuant to 28 U.S.C. §§ 1338(b) & 1367.

**ANSWER:**

Defendants deny the allegations in Paragraph No. 7.

**ALLEGATION NO. 8:**

This Court has personal jurisdiction over the Defendants because the Defendants are residents of this State and District. This Court also has personal jurisdiction over the Defendants

- 4 -

because the Defendants are engaging in various activities within this State and this District, including transacting business within this District. Furthermore, this Court has jurisdiction in this Eastern Division because the parties reside in this Division and a substantial part of the events giving rise to the claims herein occurred in this Division.

**ANSWER:**

Defendants admit the allegations in Paragraph No. 8.

**ALLEGATION NO. 9:**

Pursuant to 28 U.S.C. §§ 1391(b) & 1400(a), venue is proper in this Court because the claims arose in this District, a substantial part of the events giving rise to the claims herein occurred in this District, and one or more Defendants reside in this District, can be found in this District and are doing business in this District.

**ANSWER:**

Defendants admit the allegations in Paragraph No. 9.

**CLAIMS ARISING UNDER FEDERAL LAW**

**PRINCIPAL FACTS**

**A.     KS+A's Copyright Registrations**

**KS+A Specification Sections**

**ALLEGATION NO. 10:**

Over the years, KS+A has sought protection for valuable KS+A intellectual property assets and owns copyrights in numerous original works of authorship. An example of work for which KS+A has sought, and obtained, such protection are the wholly-original "specification sections" that KS+A creates and includes in its project manuals. Specification sections are drafted for every aspect of a construction project and drafting them requires the application of professional judgment. Together with the plans and other contract documents, the specification sections are essential to the proper design and construction of a project. For purposes of this Complaint, KS+A's original, individually copyrighted specification sections described herein are collectively referred to as the "KS+A Specification Sections." The KS+A Specification Sections provide KS+A with a centralized and organized source of original work that contributes to KS+A's efficient creation of high quality architectural and engineering project manuals and plans. The KS+A Specification Sections are an integral component of a successful construction project and they improve the quality, efficiency and uniformity of the project manuals and plans in which they are incorporated. The KS+A Specification Sections also reduce the time necessary to create the required project manuals and plans, giving KS+A a significant competitive advantage over its competitors. KS+A spent considerable time, money and effort to create, develop and maintain the KS+A Specification Sections.

CHICAGO/#1858483

**ANSWER:**

Defendants deny that specification sections are drafted for every aspect of a construction project and that the drafting of specification sections for every aspect of a construction project requires application of professional judgment. Defendants deny that specification sections are essential to the proper design and construction of a project. Defendants deny that the KS+A Specification Sections are wholly original work. Defendants deny that the drafting of specification sections require the application of professional judgment. Defendants deny that the KS+A Specification Sections are essential to or an integral component of the proper design and/or construction of a project. Mr. Kim denies that the KS+A Specification Sections reduce the time necessary to create the required project manuals and plans and give KS+A a significant competitive advantage over its competitors. Mr. Kim denies KS+A spent considerable time, money and effort to create, develop and maintain the KS+A Specification Sections. Mr. Kim is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 10 and therefore denies these allegations. Defendant CCA is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 10 and therefore deny these allegations.

**ALLEGATION NO. 11:**

For example, in the course of designing various projects and in his practice as a professional engineer, Mr. Kluber determined that it was necessary for him to apply his professional engineering skill and judgment to design a specification section dealing with data, voice and communication systems and to include such a section in the project manuals produced by KS+A for its projects. As such, Mr. Kluber authored original specification sections pertaining to data, voice and communication systems for use in connection with KS+A projects. Like the other specification sections, KS+A spent considerable time, money and effort to create, develop and maintain the KS+A Specification Sections for data, voice and communication systems.

**ANSWER:**

Defendants deny the allegations in Paragraph No. 11.

CHICAGO/#1858483

**ALLEGATION NO. 12:**

KS+A owns the copyright in the literary work entitled "Section 16740-Data, Phone and Video System-1999 Manual." The Section 16740-Data, Phone and Video System1999 Manual is wholly original and copyrightable subject matter under the laws of the United States. KS+A complied in all respects with the Copyright Act of 1976, as amended, and all other laws governing copyright, and secured by registration the exclusive rights and privileges in and to the copyright in the Section 16740-Data, Phone and Video System-1999 Manual. On September 25, 2008, the United States Register of Copyrights granted KS+A Certificate of Registration No. TX 686-8396 for the Section 16740-Data, Phone and Video System-1999 Manual. Attached as Exhibit A is a true and correct copy of a printout from the website of the United States Copyright Office evidencing this registration and attached as Exhibit B are excerpts from Section 16740-Data, Phone and Video System-1999 Manual.

**ANSWER:**

Defendants admit that Exhibit A purports to be a printout from the website of the United

States Copyright Office. Defendants deny that the Section 16740-Data, Phone and Video

System1999 Manual is wholly original and copyrightable subject matter under the laws of the

United States. Defendants deny that KS+A complied in all respects with the Copyright Act of

1976, as amended, and all other laws governing copyright. Defendants deny that Exhibit A

evidences a Certificate of Registration No. TX 686-8396 for the Section 16740-Data, Phone and

Video System-1999 Manual. Defendants are without knowledge or information sufficient to

form a belief as to the truth of the remaining allegations in Paragraph No. 12 and therefore deny

these remaining allegations.

**ALLEGATION NO. 13:**

In addition, KS+A also owns copyrights in several derivative works of the Section 16740-Data, Phone and Video System-1999 Manual. On September 24-25, 2008, the United States Register of Copyrights granted KS+A Certificates of Registration Nos. TX 686-8737, TX 686-8820, TX 686-8406, TX 686-8878 and TX 686-8824 for these derivative works. Attached as Exhibit A is a true and correct copy of a printout from the website of the United States Copyright Office evidencing these registrations and attached as Exhibit C are excerpts from several of these copyrighted derivative works.

CHICAGO/#1858483

**ANSWER:**

Defendants admit that Exhibit A purports to be a printout from the website of the United States Copyright Office.  Defendants deny that KS+A owns valid copyrights in any derivative works of the Section 16740-Data, Phone and Video System-1999 Manual.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 13 and therefore deny these allegations.

### KS+A Electrical Standards Library

**ALLEGATION NO. 14:**

Beginning in 1992, KS+A commenced the creation of a library of original technical drawings in the electrical engineering discipline ("KS+A Electrical Standards Drawings").  Also beginning in 1992, KS+A created a compilation of symbols and abbreviations for the electrical engineering discipline ("KS+A Symbols and Abbreviations").  The body and compilation of KS+A Electrical Standards Drawings and KS+A Symbols and Abbreviations comprise KS+A's Electrical Standards Library ("KS+A Electrical Standards Library").  KS+A continues to create, organize and refine the KS+A Electrical Standards Drawings and KS+A Symbols and Abbreviations.  The KS+A Electrical Standards Library currently contains nearly one hundred KS+A Electrical Standards Drawings.  KS+A uses the KS+A Electrical Standards Drawings and KS+A Symbols and Abbreviations in the creation of its architectural and engineering plans, drawings and designs.  Attached as Exhibit D are excerpts from the KS+A Electrical Standards Drawings, and attached as Exhibit E is a copy of the KS+A Symbols and Abbreviations.

**ANSWER:**

Mr. Kim is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence in Paragraph No. 14 and therefore denies these allegations. Mr. Kim denies that KS+A created a compilation of symbols and abbreviations for the electrical engineering discipline.  Mr. Kim denies that the KS+A Electrical Standards Drawings are wholly original technical drawings in the engineering discipline.  Mr. Kim is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph No. 14 and therefore denies these allegations.  CCA is without sufficient information to form a belief as to the truth of the allegations in Paragraph No. 14 and therefore denies these allegations.

**ALLEGATION NO. 15:**

KS+A spent considerable time, money and effort to create, develop and maintain the KS+A Electrical Standards Drawings and KS+A Symbols and Abbreviations. The KS+A Electrical Standards Drawings and KS+A Symbols and Abbreviations provide KS+A with a centralized and organized source of original work that contributes to KS+A's efficient creation of high quality architectural and engineering plans, drawings and designs, and the KS+A Electrical Standards Drawings and KS+A Symbols and Abbreviations provide KS+A with a significant competitive advantage over its competitors.

**ANSWER:**

Defendants deny the allegations in Paragraph No. 15.

**ALLEGATION NO. 16:**

The KS+A Electrical Standards Drawings and KS+A Symbols and Abbreviations constitute a large portion of the intellectual capital amassed by KS+A over the many years during which it, and its predecessor companies, have been in business. The KS+A Electrical Standards Drawings and KS+A Symbols and Abbreviations require the professional skill, experience and education of KS+A engineers and/or architects to create, develop, revise and use professionally. They are a vital asset to KS+A's overall business.

**ANSWER:**

Defendants deny the allegations in Paragraph No. 16.

**ALLEGATION NO. 17:**

The KS+A Electrical Standards Drawings and KS+A Symbols and Abbreviations are an integral component of a successful construction project and they improve the quality, efficiency and uniformity of the plans, specifications and drawings in which they are incorporated. The KS+A Electrical Standards Drawings and KS+A Symbols and Abbreviations also reduce the time necessary to create the required plans, specifications and drawings for any such project, giving KS+A a competitive advantage over its competitors.

**ANSWER:**

Defendants deny the allegations in Paragraph No. 17.

**ALLEGATION NO. 18:**

KS+A owns a copyright in the KS+A Electrical Standards Drawings. The KS+A Electrical Standards Drawings are wholly original and copyrightable subject matter under the laws of the United States. KS+A complied in all respects with the Copyright Act of 1976, as amended, and all other laws governing copyright, and secured by registration the exclusive rights and privileges in and to the copyright in the KS+A Electrical Standards Drawings. On

September 29, 2008, the United States Register of Copyrights granted KS+A Certificate of Registration No. VAu 967-727 for the KS+A Electrical Standards Drawings. Attached as Exhibit A is a true and correct copy of a printout from the website of the United States Copyright Office evidencing this registration.

**ANSWER:**

Defendants admit that Exhibit A purports to be a printout from the website of the United States Copyright Office. Defendants deny that KS+A owns a valid copyright in the KS+A Electrical Standards Drawings. Defendants deny that the KS+A Electrical Standards Drawings are wholly original and copyrightable subject matter under the laws of the United States. Defendants deny that KS+A complied in all respects with the Copyright Act of 1976, as amended, and all other laws governing copyright. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 18 and therefore deny these allegations.

**ALLEGATION NO. 19:**

Likewise, KS+A owns a copyright in the KS+A Symbols and Abbreviations. The compilation of KS+A Symbols and Abbreviations is wholly original and copyrightable subject matter under the laws of the United States. KS+A complied in all respects with the Copyright Act of 1976, as amended, and all other laws governing copyright, and secured by registration exclusive rights and privileges in and to the copyright in the KS+A Symbols and Abbreviations. On May 22, 2008, the United States Register of Copyrights granted KS+A Certificate of Registration No. VAu 960-756 for the KS+A Symbols and Abbreviations. A true and correct copy of this Certificate is attached as Exhibit F.

**ANSWER:**

Defendants admit that Exhibit F purports to be a Certificate of Registration for technical drawing of symbols and text entitled KS+A Symbols and Abbreviations. Defendants deny that KS+A owns a valid copyright in the KS+A Symbols and Abbreviations. Defendants deny that the compilation of KS+A Symbols and Abbreviations is wholly original and copyrightable subject matter under the laws of the United States. Defendants deny that KS+A complied in all respects with the Copyright Act of 1976, as amended, and all other laws governing copyright.

- 10 -

Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 19 and therefore deny these allegations.

**KS+A Project Plans**

**ALLEGATION NO. 20:**

In addition to the KS+A Specification Sections and KS+A Electrical Standards Library, KS+A owns copyrights in numerous original project plans consisting of original technical drawings and project manuals, among other things.  For purposes of this Complaint, the original, copyrighted project plans described herein are collectively referred to as the "KS+A Project Plans."

**ANSWER:**

Defendants deny that KS+A owns valid copyrights in the KS+A Project Plans. Defendants deny that the KS+A Project Plans are wholly original works.  Defendants admit that KS+A refers to certain project plans throughout its Second Amended Complaint as KS+A Project Plans.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 20 and, therefore, deny these allegations.

**ALLEGATION NO. 21:**

The creation of each of the individual project plans comprising the KS+A Project Plans was an arduous process—a process that began at the time KS+A was awarded each respective project and ending years later.

**ANSWER:**

Mr. Kim admits that the electrical portion of the projects on which he worked for KS+A took from a few days to a few months to complete.  Mr. Kim is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 21 and therefore denies these allegations.  CCA is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 21 and therefore denies these allegations

CHICAGO/#1858483

**ALLEGATION NO. 22:**

By way of example, KS+A owns the copyright in the drawings and text entitled "Park District-Southbury Site Architectural Plans-not yet constructed" ("Park District-Southbury Plans"). The Park District-Southbury Plans are wholly original and copyrightable subject matter under the laws of the United States. KS+A complied in all respects with the Copyright Act of 1976, as amended, and all other laws governing copyright, and secured by registration the exclusive rights and privileges in and to the copyright in the Park District-Southbury Plans. On January 5, 2007, the United States Register of Copyrights granted KS+A Certificate of Registration No. VAu 740-105 for the Park District-Southbury Plans. On May 21, 2008, the United States Register of Copyrights granted KS+A a Supplementary Certificate of Registration No. VAu 756-017 for the Park District-Southbury Plans. True and correct copies of these Certificates and excerpts of the Park District-Southbury Plans are attached as Exhibit G.

**ANSWER:**

Defendants admit that Exhibit G purports to include documents entitled Certificate of Registration No. VAu 740-105 for an architectural work titled "Park District–Southbury Plans—not yet constructed" and Supplementary Certificate of Registration No. VAu 756-017 for architectural plans titled "Park District – Southbury Plans – not yet constructed." Defendants admit that Exhibit G further purports to include excerpts from certain technical drawings that may be part of the Southbury Plans. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 22 and therefore deny these allegations.

**ALLEGATION NO. 23:**

KS+A also owns the copyright in the drawings and text entitled "New (Plank) Junior High School Plans and Project Manual-constructed 2006" ("Plank Junior High Plans"). The Plank Junior High Plans are wholly original and copyrightable subject matter under the laws of the United States. KS+A complied in all respects with the Copyright Act of 1976, as amended, and all other laws governing copyright, and secured by registration the exclusive rights and privileges in and to the copyright in the Plank Junior High Plans. On January 5, 2007, the United States Register of Copyrights granted KS+A a Certificate of Registration No. VAu 734-219 for the Plank Junior High Plans. On May 21, 2008, the United States Register of Copyrights granted KS+A a Supplementary Certificate of Registration No. VAu 756-019 for the Plank Junior High Plans. True and correct copies of these Certificates and excerpts of the Plank Junior High Plans are attached as Exhibit H.

**ANSWER:**

Defendants admit that Exhibit H purports to include documents entitled Certificate of Registration No. VAu 734-219 for an architectural work titled "New (Plank) Junior High School architectural plans and Project Manual—constructed 2006" and Supplementary Certificate of Registration No. VAu 756-019 for "New (Plank) Junior High Plans and Project Manual – constructed 2006." Defendants further admit that Exhibit H purports to include excerpts from certain technical drawings that may be part of the Plank Junior High Plans. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 23 and therefore deny these allegations.

**ALLEGATION NO. 24:**

KS+A also owns the copyright in the drawings and text entitled "New (Ashcroft) Junior High School Architectural Plans-not yet constructed" ("Ashcroft Junior High Plans"). The Ashcroft Junior High Plans are wholly original and copyrightable subject matter under the laws of the United States. KS+A complied in all respects with the Copyright Act of 1976, as amended, and all other laws governing copyright, and secured by registration the exclusive rights and privileges in and to the copyright in the Ashcroft Junior High Plans. On January 5, 2007, the United States Register of Copyrights granted KS+A a Certificate of Registration No. VAu 739-071 for the Ashcroft Junior High Plans. On May 21, 2008, the United States Register of Copyrights granted KS+A a Supplementary Certificate of Registration No. VAu 756-018. True and correct copies of these Certificates and excerpts of the Ashcroft Junior High Plans are attached as Exhibit I.

**ANSWER:**

Defendants admit that Exhibit I purports to include documents entitled Certificate of Registration No. VAu 739-071 for an architectural work titled "New (Ashcroft) Junior High School Architectural Plans—not yet constructed" and Supplementary Certificate of Registration No. VAu 756-018 entitled "New (Ashcroft) Junior High School Architectural Plans—not yet constructed." Defendants admit that Exhibit I further purports to include excerpts from certain technical drawings that may be part of the Ashcroft Junior High Plans. Defendants are without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in Paragraph No. 24 and therefore deny these allegations.

## ALLEGATION NO. 25:

KS+A also owns the copyright in the drawings and text entitled "Grande Park Elementary School Plans and Project Manual" ("Grande Park Plans"). The Grande Park Plans are wholly original and copyrightable subject matter under the laws of the United States. KS+A complied in all respects with the Copyright Act of 1976, as amended, and all other laws governing copyright, and secured by registration the exclusive rights and privileges in and to the copyright in the Grande Park Plans. On January 11, 2007, the United States Register of Copyrights granted KS+A a Certificate of Registration No. VAu 739-704 for the Grande Park Plans. On May 21, 2008, the United States Register of Copyrights granted KS+A a Supplementary Certificate of Registration No. VAu 756-021 for the Grande Park Plans. True and correct copies of these Certificates and excerpts of the Grande Park Plans are attached as Exhibit J.

## ANSWER:

Defendants admit that Exhibit J purports to include documents entitled Certificate of

Registration No. VAu 739-704 for an architectural work titled "Grande Park Elementary School

Plans and Project Manual- under construction" and Supplementary Certificate of Registration

No. VAu 756-021 for architectural plans titled "Grande Park Elementary School Plans and

Project Manual – under construction." Defendants admit that Exhibit J further purports to include

excerpts from certain technical drawings that may be part of the Grande Park Plans. Defendants

are without knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in Paragraph No. 25 and therefore deny these allegations.

## ALLEGATION NO. 26:

KS+A also owns the copyright in the drawings and text entitled "New Elementary Schools 1 and 2 (Southbury Elementary) Architectural Plans-not yet constructed" ("Southbury Elementary Plans"). The Southbury Elementary Plans are wholly original and copyrightable subject matter under the laws of the United States. KS+A complied in all respects with the Copyright Act of 1976, as amended, and all other laws governing copyright, and secured by registration the exclusive rights and privileges in and to the copyright in the Southbury Elementary Plans. On January 11, 2007, the United States Register of Copyrights granted KS+A a Certificate of Registration No. VAu 739-070 for the Southbury Elementary Plans. On May 21, 2008, the United States Register of Copyrights granted KS+A a Supplementary Certificate of

Registration No. VAu 756-020 for the Southbury Elementary Plans.  True and correct copies of these Certificates and excerpts of the Southbury Elementary Plans are attached as Exhibit K.

**ANSWER:**

Defendants admit that Exhibit K purports to include documents entitled Certificate of Registration No. VAu 739-070 for an architectural work titled "New Elementary Schools 1 and 2 (Southbury Elementary) Architectural Plans—not yet constructed" and Supplementary Certificate of Registration No. VAu 756-020 for architectural plans titled "New Elementary Schools 1 and 2 (Southbury Elementary) Architectural Plans—not yet constructed."  Defendants admit that Exhibit K further purports to include excerpts from certain technical drawings that may be part of the Southbury Elementary Plans.  Defendants are without information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 26 and therefore deny these allegations.

**ALLEGATION NO. 27:**

KS+A regularly placed a copyright notice on the KS+A Project Plans. The KS+A Project Plans also include some of the KS+A Electrical Standards Drawings, the KS+A Symbols and Abbreviations and the KS+A Specification Sections.

**ANSWER:**

CCA is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 26 and therefore denies these allegations.  Mr. Kim admits that a copyright symbol was included in the template for the title block used by KS+A with its drawings during his tenure with KS+A.

**ALLEGATION NO. 28:**

For purposes of this action, the KS+A Project Plans, KS+A Electrical Standards Drawings, KS+A Symbols and Abbreviations and KS+A Specification Sections, are referred to herein collectively as the "KS+A Copyrighted Works."

- 15 -

**ANSWER:**

Defendants admit that KS+A collectively refers in the Second Amended Complaint to the

KS+A Project Plans, KS+A Electrical Standards Drawings, KS+A Symbols and abbreviations

and KS+A Specification sections as "KS+A Copyrighted Works."

**ALLEGATION NO. 29:**

At all relevant times, KS+A has been, and still is, the sole proprietor of all rights, title and
interest in and to the copyrights in the KS+A Copyrighted Works.

**ANSWER:**

Defendants deny the allegations in Paragraph No. 29.

**B.     Mr. Kim's Access To The KS+A Copyrighted Works**

**ALLEGATION NO. 30:**

Mr. Kim was employed by KS+A from April 15, 2002, until April 12, 2004.  During his
period of employment at KS+A, Mr. Kim was a licensed engineer intern who worked in a
position of trust.

**ANSWER:**

CCA is without sufficient knowledge or information to form a belief as to the truth of the

allegations in Paragraph No. 30 and therefore denies these allegations.  Mr. Kim admits that he

began his employment with KS+A on April 15, 2002 and was employed as a licensed engineer

intern, but denies that he was employed by KS+A through Monday, April 12, 2004. Rather, Mr.

Kim avers that his final day of employment at KS+A was on Friday, April 2, 2004.

**ALLEGATION NO. 31:**

As an employee of KS+A, Mr. Kim was exposed to, and also had access to, the KS+A
Copyrighted Works, or relevant portions thereof.

**ANSWER:**

Mr. Kim admits that he assisted in drafting or developing certain portions of drawings

schematics and plans contained within KS+A's Copyrighted Works.  CCA is without sufficient

- 16 -

knowledge or information to form a belief as to the truth of the allegations in Paragraph No. 31

and therefore denies these allegations.

## ALLEGATION NO. 32:

At all relevant times, KS+A protected electronic access to the KS+A Copyrighted Works with passwords and other security measures intended to protect the KS+A Copyrighted Works.

## ANSWER:

Mr. Kim denies the allegations contained in Paragraph No. 32.    CCA is    without

knowledge or information sufficient to form a belief as to the truth of the allegations in

Paragraph No. 32 and therefore denies these allegations.

## ALLEGATION NO. 33:

Mr. Kim's authorized access to the KS+A Electrical Standards Drawings and KS+A Symbols and Abbreviations was limited to assisting Mr. Kluber in drawing and entering the KS+A Electrical Standards Drawings and KS+A Symbols and Abbreviations into KS+A's proprietary Electrical Standards Library.  However, at no time was Mr. Kim authorized to copy and/or use for his own benefit or for the benefit of a third party the KS+A Electrical Standards Drawings and KS+A Symbols and Abbreviations.

## ANSWER:

Mr. Kim denies the allegations in Paragraph No. 33.    CCA is without knowledge or

information sufficient to form a belief as to the truth of the allegations in Paragraph No. 33 and

therefore denies these allegations.

## ALLEGATION NO. 34:

Likewise, Mr. Kim's authorized access to the KS+A Specification Sections and KS+A Project Plans, or relevant portions thereof, was limited to the time period shortly before the end of his employment with KS+A.  However, at no time was Mr. Kim authorized to copy and/or use for his own benefit or for the benefit of a third party the KS+A Specification Sections and KS+A Project Plans.

- 17 -

**ANSWER:**

Mr. Kim denies the allegations in Paragraph No. 34.   CCA is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 34 and therefore denies these allegations.

**ALLEGATION NO. 35:**

Mr. Kim, either without authorization or by exceeding his authorization, accessed KS+A's protected computers and such computers are used in interstate commerce.

**ANSWER:**

Mr. Kim denies the allegations in Paragraph No. 35. CCA is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 35 and therefore denies these allegations.

**ALLEGATION NO. 36:**

In accessing KS+A's computers, Mr. Kim, knowingly and with intent to defraud, copied, transferred and/or downloaded the KS+A Electrical Standards Drawings, KS+A Symbols and Abbreviations, KS+A Specification Sections and KS+A Project Plans, or relevant portions thereof.

**ANSWER:**

Mr. Kim denies the allegations in Paragraph No. 36.   CCA is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 36 and therefore denies these allegations.

**C.      Defendants' Infringing Conduct**

**ALLEGATION NO. 37:**

Within a short time after starting his employment with Cordogan, a competitor of KS+A, Mr. Kim and Cordogan used and reproduced the KS+A Electrical Standards Drawings, KS+A Symbols and Abbreviations, KS+A Specification Sections and KS+A Project Plans, or relevant portions thereof, and copied the KS+A Electrical Standards Drawings, KS+A Symbols and Abbreviations, KS+A Specification Sections and KS+A Project Plans in preparing documents, designs, plans, drawings, and specifications.   Set forth below are certain, non-exhaustive examples of Defendants' infringing conduct.

**ANSWER:**

Defendants admit that KS+A and CCA are competitors.  Mr. Kim admits that he utilized

certain design elements, drawings and abbreviations that he brought with him from a prior

employer to KS+A or that he copied from publicly available sources while at KS+A.  Defendants

deny the remaining allegations in Paragraph No. 37.

**ALLEGATION NO. 38:**

By way of example, Defendants created a set of specifications for the Bank Branch
Facility, Wheaton, Illinois ("Bank Branch Specification").  Attached as Exhibit L is an excerpt
from the Bank Branch Specification.  Substantial portions of the wholly original and copyrighted
Section 16740-Data, Phone and Video System-1999 Manual and the copyrighted derivative work
Section 16740-Data, Phone and Video System-11/2003, were copied and reproduced in the Bank
Branch Specification.  On information and belief, other Cordogan project manuals and/or
specifications also contain infringing portions of the Section 16740-Data, Phone and Video
System-1999 Manual and/or the copyrighted derivative works of that section, including
Section 16740-Data, Phone and Video System-11/2003 Manual.  These Cordogan project
manuals and/or specifications, along with the Bank Branch Specification, are referred to herein
as "Infringing Specifications."  Below are certain representative comparisons of Section 16740-
Data, Phone and Video System-1999 Manual and Section 16740-Data, Phone and Video System-
11/2003 Manual, and the infringing Bank Branch Specification.

**ANSWER:**

Defendants admit that they created a set of specifications for the Bank Branch

Specification and that Exhibit L is an excerpt from the Bank Branch Specification.  The overall

format of the excerpt from the Bank Branch Specification looks similar to the excerpt from the

Section 16740-Data, Phone and Video System-1999 Manual because both sets of specifications

appear to have been created by utilizing the AIA's copyrighted Master Spec template and/or the

Construction Specification Institute's copyrighted Master Format as well as manufacturers'

product specifications.    Master  Format  is  a  standard  document  format  created  by  the

Construction Specification Institute to provide a uniform approach (including section numbers

and page formats) to prepare specifications for construction documents.  Defendants deny the

remaining allegations in Paragraph No. 38.

CHICAGO/#1858483

**KS+A Section 16740-Data, Phone and Video System-1999 Manual**

**ALLEGATION NO. 39:**

The first line of this excerpt of Section 16740-Data, Phone and Video System 1999 Manual bears a typographical error and incorrectly reads "[p]rovide a compete and function data . . . ."   This line was supposed to read "[p]rovide a complete and functional data . . . ." (emphasis added).

> 2.   Provide a compete and function data, phone and video structured cabling system in full compliance with the referenced standards.
>    a.   Data System: Provide structured cabling system in full compliance with Category 5 transmission standards of EIA/TIA-568-A.
>    b.   Phone System: Fully compatible with existing premises phone system. Provide cabling system in full compliance with Category 3 transmission standards of EIA/TIA-568-A.
>    c.   Video System: Provide wide band video cabling system compatible with existing video distribution hardware.

**ANSWER:**

Defendants admit that an excerpt of what KS+A has identified as Section 16740-Data, Phone and Video System 1999 Manual is quoted in Paragraph 39 and that it reflects the phrase "Provide a compete and function data ..."   Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 39 and therefore deny these allegations.

**Defendants' Infringing Bank Branch Specification**

**ALLEGATION NO. 40:**

In addition to Defendants' Bank Branch Specification excerpt being substantially similar to KS+A's, the exact same "compete and function" typographical error appears in Defendants' Bank Branch Specification.

> 1.   Provide a compete and function data and phone structured cabling system in full compliance with the referenced standards.
>    a.   Data System: Provide structured cabling system in full compliance with enhanced Category 5e transmission standards of EIA/TIA-568-B.
>    b.   Phone (referred to also as Voice within these documents and Drawings) System: Provide cabling system in full compliance with Category 3 transmission standards of EIA/TIA-568-B.

- 20 -

**ANSWER:**

Defendants admit that the excerpt inserted in this paragraph shows the use of the phrase

"compete and function" and deny the remaining allegations in Paragraph No. 40.

**KS+A Section 16740-Data, Phone and Video System-1999 Manual**

**ALLEGATION NO. 41:**

In the course of creating Section 16740-Data, Phone and Video System-1999 Manual, Mr. Kluber coined the wholly-original term "PDC" as a KS+A internal reference that has no meaning whatsoever to professionals within the trade or to consumers. Mr. Kluber inadvertently left that term in Section 16740-Data, Phone and Video System-1999 Manual as part of a section heading.

    2.09    PHONE TERMINAL BLOCKS - PDC

        A.    Manufacturer:
              1.    Leviton.
              2.    Panduit.
              3.    Siemon.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph No. 41 and therefore deny these allegations.

**Defendants' Infringing Bank Branch Specification**

**ALLEGATION NO. 42:**

Despite having no meaning to anyone outside of KS+A, this same "PDC" term appears in Defendants' Bank Branch Specification.

    2.5    PHONE TERMINAL BLOCKS - PDC

        A.    Manufacturer:
              1.    Avaya.
              2.    Hubbell.
              3.    Leviton.
              4.    Panduit.
              5.    Substitution: Or Approved Equal.

- 21 -

**ANSWER:**

Defendants admit that the acronym "PDC" appears in the excerpt inserted in Paragraph No. 42. Mr. Kim denies that the acronym has no meaning outside of KS+A. CCA is without information sufficient to form a belief as to the truth of the allegations in Paragraph No. 42 and therefore denies same.

**KS+A Section 16740-Data, Phone and Video System-1999 Manual**

**ALLEGATION NO. 43:**

By way of further example, KS+A created the wholly-original excerpt of Section 16740-Data, Phone and Video System-1999 Manual with respect to outlets to be used in the project.

2.10 OUTLETS

A. Manufacturers:
1. Leviton.
2. Panduit.
3. Siemon.
4. Amp, Inc.

B. Description: UL-514C, FCC Part 68 compliant, field convertible information outlets, single gang strap, configuration as indicated on Drawings. Blank fillers where indicated on Drawings. High impact, self-extinguishing plastic rated UL 94V-O, ivory.

C. Data Ports: 8-position modular RJ45 jack per IEC 603-7 (all 4 pairs connected). Pin/pair assignment per TIA/EIA 568B with integral IDC-type terminals.
1. Durability Rating: 750 mating cycles minimum.

D. Phone Ports: 4 conductor, modular RJ45 jack with integral IDC-type terminals.

**ANSWER:**

Defendants deny that the excerpt set forth in Paragraph No. 43 is wholly original to KS+A. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 43 and therefore deny these allegations.

**Defendants' Infringing Bank Branch Specification**

**ALLEGATION NO. 44:**

In comparison, Defendants' Bank Branch Specification excerpt dealing with outlets is nearly identical to KS+A's excerpt.

- 22 -

2.7     OUTLETS

A.     Manufacturers:
          1.     Leviton.
          2.     Panduit.
          3.     Siemon.
          4.     Amp.
          5.     Avaya.
          6.     Hubbell.

B.     Description: UL-514C, FCC Part 68 compliant, field convertible information outlets, single gang strap, and configuration as indicated on Drawings. Blank fillers where indicated on Drawings. High impact, self-extinguishing plastic rated UL 94V-O, Color as selected by Architect.

C.     Data Ports: 8-position modular RJ45 jack per IEC 603-7 (all 4 pairs connected). Pin/pair assignment per TIA/EIA-568-B with integral IDC-type terminals, category 5e.
          1.     Durability Rating: 750 mating cycle minimum.

D.     Phone Ports: 8 conductor, modular RJ45 jack with integral IDC-type terminals, category 3.
          1.     Color: Match Power Outlet.

## ANSWER:

Defendants admit that they created a set of specifications for the Bank Branch Specification. Defendants further admit that the excerpt inserted in Paragraph No. 44 utilizes the same overall format of the excerpt inserted in Paragraph No. 43 because both sets of specifications were created using Master Spec and/or Master Format and similar manufacturers' product specifications. Defendants deny the remaining allegations in Paragraph No. 44.

**KS+A Section 16740-Data, Phone and Video System-11/2003 Manual**

## ALLEGATION NO. 45:

KS+A's copyrighted derivative work, KS+A Section 16740-Data, Phone and Video System-11/2003 Manual, as well as other KS+A Specification Sections, contains a misspelling of a manufacturer's name. Specifically, KS+A repeatedly misspelled the manufacturer name "Liebert" as "Libert."

CHICAGO/#1858483

2.10    UNINTERRUPTIBLE POWER SUPPLY (UPS)

A.    Manufacturers:
1.    Controlled Power Company.
2.    Libert.
3.    Powerware.
4.    Or Approved Equal.

B.    Description:   Rack-mounted, single phase, on-line uninterruptible power supply with static bypass.
1.    Input Voltage: 90 to 132 VAC.
2.    Output Voltage: 120VAC.
3.    Transient Suppression: Complies with ANSI/IEEE C62.41.
4.    Connection: Power Cord.
5.    Capacity: 1750 VA, 12 minute back-up time at 100% load.
6.    Batteries: Sealed, maintenance free, five year full warranty.

## ANSWER:

Defendants deny that KS+A has a valid copyright in the KS+A Section 16740-Data, Phone and Video System-11/2003 manual or any other KS+A Specification Sections. Defendants admit that the excerpt from the KS+A Specifications inserted into this Paragraph No. 45 includes a manufacturer identified as Libert. Defendants deny the remaining allegations in Paragraph No. 45.

### Defendants' Infringing Bank Branch Specification

## ALLEGATION NO. 46:

Likewise, this same misspelling appears within Defendants' Bank Branch Specification.

2.8     UNINTERRUPTIBLE POWER SUPPLY (UPS)

A.     Manufacturers:
    1.     APC.
    2.     Chloride.
    3.     Libert.
    4.     Powerware.
    5.     Mitsubishi.

B.     Description: Rack-mounted, single phase, on-line uninterruptible power supply with static bypass.
    1.     Input Voltage: 90 to 132 VAC.
    2.     Output Voltage: 120VAC.
    3.     Transient Suppression: Complies with ANSI/IEEE C62.41
    4.     Connection: Power Cord.
    5.     Capacity: 1800 VA, 10-minute back-up time at 100% loads.
    6.     Batteries: Sealed, maintenance free, five year full warranty.

## ANSWER:

Defendants admit that the excerpt inserted in this paragraph 46 includes a manufacturer identified as Libert and the correct manufacturer's name is Liebert. Mr. Kim admits that he may have spelled Liebert incorrectly on more than one occasion, but denies that it evidences unlawful copying of KS+A's specifications. Defendants deny the remaining allegations in Paragraph No. 46.

## ALLEGATION NO. 47:

Also by way of example, in or about July 2004, Defendants prepared plans, designs and specifications for a structure of the Fox Valley Park District known as the "Vaughn Center." Between July and October 2004, Defendants made revisions to the plans and drawings ("Vaughn Center Drawings"). The drawings for the Vaughn Center are attributed to, and bear the name of, Cordogan and do not bear the name of KS+A. True and correct copies of excerpts of the Vaughn Center Drawings are attached as Exhibit M.

## ANSWER:

Defendants admit the allegations in Paragraph No. 47.

## ALLEGATION NO. 48:

In 2008, KS+A was hired by the Fox Valley Park District to review issues regarding the design and construction of the Vaughn Center. In reviewing the original Vaughn Center Drawings, KS+A first noticed that certain of the KS+A Electrical Standards Drawings and

CHICAGO/#1858483

KS+A Symbols and Abbreviations were copied and incorporated into the Vaughn Center Drawings.

**ANSWER:**

Defendants deny that the KS+A Electrical Standards Drawings and KS+A Symbols were copied and incorporated into the Vaughn Center Drawings. Defendants are without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph No. 48 and therefore deny these allegations.

**ALLEGATION NO. 49:**

In preparing the Vaughn Center Drawings, Defendants improperly used and reproduced KS+A Electrical Standards Drawings and KS+A Symbols and Abbreviations. At least twelve different KS+A Electrical Standards Drawings were copied and reproduced in the Vaughn Center Drawings, and these KS+A Electrical Standards Drawings are shown in Exhibit D. The KS+A Symbols and Abbreviations were also copied and reproduced in the Vaughn Center Drawings. Below are representative comparisons of certain of the KS+A Electrical Standards Drawings and Defendants' infringing Vaughn Center Drawings.

**KS+A Electrical Standards Drawing**



**Defendants' Infringing Drawing**



**KS+A Electrical Standards Drawing**





# TYP. FLOOR PENETRATION DETAIL ⊙
#### SCALE: N.T.S.

CHICAGO/#1858483

**Defendants' Infringing Drawing**



**ANSWER:**

Defendants deny that they improperly used and reproduced KS+A Electrical Standards Drawings and KS+A Symbols and Abbreviations when preparing the Vaughn Center drawings or that they infringed any KS+A copyright when preparing the Vaughn Center drawings. Defendants deny that the KS+A Electrical Standard Drawings purportedly attached as Exhibit D are wholly original or copyrightable by KS+A. Defendants deny the remaining allegations in Paragraph No. 49.

**ALLEGATION NO. 50:**

By way of further example, in or about December 2007, Cordogan created a set of plans, drawings and specifications for the new City of Aurora Police Department Facility ("Aurora Police Station Drawings"). Attached as Exhibit N is an excerpt from the Aurora Police Station Drawings. Portions of the KS+A Electrical Standards Drawings and KS+A Project Plans were copied and reproduced in the Aurora Police Station Drawings. Below is a representative comparisons [*sic*] of a portion of the KS+A Electrical Standards Drawings and Defendants' infringing Aurora Police Station Drawings.

**KS+A Electrical Standards Drawing**



ELEVATOR RECALL DETAIL
SCALE: N.T.S.

**Defendants' Infringing Drawing**



## ANSWER:

Defendants admit that they created a set of plans, drawings and specifications for the new

City of Aurora Police Department Facility ("Aurora Police Station Drawings"). Defendants are

without knowledge or information sufficient to form a belief as to whether Exhibit N reflects an

- 29 -

excerpt from the Aurora Police Station Drawings and therefore denies these allegations. Defendants deny that they infringed any valid KS+A copyright when they created the Aurora Police Station Drawings. Defendants deny the remaining allegations in Paragraph No. 50.

**[Doug, Please check this!]**

## ALLEGATION NO. 51:

In addition to infringing the KS+A Specification Sections, KS+A Electrical Standards Drawings and KS+A Symbols and Abbreviations, Defendants have also infringed the KS+A Project Plans. By way of example, Defendants incorporated completely original sections of KS+A's Plank Junior High Plans and KS+A Southbury Elementary Plans into their Bank Branch Specification, among others. Below are certain representative comparisons of the KS+A Plank Junior High Plans and KS+A Southbury Elementary Plans to the Bank Branch Specification.

### KS+A Plank Junior High Plans

## ANSWER:

Defendants deny the allegations in Paragraph No. 51.

## ALLEGATION NO. 52:

Specification section 16709-05 of the copyrighted Plank Junior High Plans includes arbitrary examples created by KS+A and an original methodology wholly created by KS+A.

2.03   NOMENCLATURE

A.   Outlets: Arrangement and inscriptions as specified herein and indicated on Drawings.
1.   Faceplate Label: Room Number-Outlet Tag (e.g. 202S1)
2.   Jack: Jack type- above (e.g. "Data", "Phone", Video"), Port designation-below (e.g. "A").

B.   Horizontal Cable: DF Closet-Room Number-Outlet Designation-Port Designation (e.g. "M-202-S1-A")
1.   Cable bundles: DF Closet-Room Numbers (e.g. M-202,6,8,12,14,18)

C.   Rack: Sequentially by number (e.g. "1")

D.   Rack Ports and Punch Down Blocks: Room Number-Outlet Tag-Port Designation (e.g. "202-T1-A).

E.   Backbone and Fiber Optic Cable: DF Closet(from)-DF Closet(to)-pair number (e.g. M-1-1).

- 30 -

**Bank Branch Specification**

## ANSWER:

Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 52 because the terms "arbitrary examples" and "original methodology" are vague, ambiguous, and undefined and therefore deny these allegations.

## ALLEGATION NO. 53:

This excerpt from Cordogan's Bank Branch Specification is identical to the above excerpt of KS+A's Plank Junior High Plans.

2.3    NOMENCLATURE

A.    Outlets: Arrangement and inscriptions as specified herein and indicated on Drawings.
   1.    Faceplate Label: Room Number-Outlet Tag (e.g. 202S1).
   2.    Jack: Jack type- above (e.g. "Data", "Phone", Video"). Port designation-below (e.g. "A").

B.    Horizontal Cable: DF Closet-Room Number-Outlet Designation-Port Designation (e.g. "M-202-S1-A").
   1.    Cable bundles: DF Closet-Room Numbers (e.g. M-202, 6, 8, 12, 14, 18).

C.    Rack: Sequentially by number (e.g. "1").

D.    Rack Ports and Punch Down Blocks: Room Number-Outlet Tag-Port Designation (e.g. "202-T1-A).

E.    Backbone and Fiber Optic Cable: DF Closet (from)-DF Closet (to)-pair number (e.g. M-1-1).

### KS+A Plank Junior High Plans

## ANSWER:

Defendants deny the allegations in Paragraph No 53.

## ALLEGATION NO. 54:

The below excerpt from specification section 16709-03 of the copyrighted Plank Junior High Plans is wholly-original.

CHICAGO/#1858483

3.01   PREPARATION

A.   Degrease and clean surfaces to receive nameplates and labels.

3.02   APPLICATION

A.   Install labels parallel to equipment lines.

B.   Locate labels at each cable end and bundle. Locate additional label at midpoint of each cable bundle and each cable pull location.

C.   Pre-print all labels at minimum 600 dpi resolution .

D.   Replace illegible or missing labels (for any reason) at contractor's sole expense up to final payment.

E.   Label all components in conformance with EIA/TIA 606 standard.

F.   Locate fiber optic warning label at twenty foot intervals along the length of the cable run.
      1.   Locate fiber optic danger labels at each termination hardware location.

G.   Cable Schedule: Post in prominent location at each wiring closet and cabinet. List incoming and outgoing cables and their designations, origins, and destinations. Protect with rigid frame and clear plastic cover.
      1.   Provide electronic and paper copy of final comprehensive schedules for Project. Utilize software with full OLE capabilities to interface with Owner's available software. At Contractor's option, purchase software and license for Owner in lieu of OLE requirement.

## ANSWER:

Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 54 as to whether this excerpt is "wholly-original" and therefore denies these allegations.

### Bank Branch Specification

## ALLEGATION NO. 55:

In comparison, Defendants' Bank Branch Specification excerpt is identical to the excerpt from KS+A's Plank Junior High Plans.

- 32 -

3.1     PREPARATION

  A.    Degrease and clean surfaces to receive nameplates and labels.

3.2     APPLICATION

  A.    Install labels parallel to equipment lines.

  B.    Locate labels at each cable end and bundle.  Locate additional label at midpoint of each cable
        bundle and each cable pull location.

  C.    Pre-print all labels at minimum 600 dpi resolution.

  D.    Replace illegible or missing labels (for any reason) at contractor's sole expense up to final
        payment.

  E.    Label all components in conformance with EIA/TIA 606 standard.

  F.    Locate fiber optic warning label at twenty-foot intervals along the length of the cable run.

  G.    Locate fiber optic danger labels at each termination hardware location.

  H.    Cable Schedule: Post in prominent location at each wiring closet and cabinet. List incoming and
        outgoing cables and their designations, origins, and destinations. Protect with rigid frame and
        clear plastic cover.
        1.    Provide electronic and paper copy of final comprehensive schedules for Project. Utilize
              software with full OLE capabilities to interface with Owner's available software. At
              Contractor's option, purchase software and license for Owner in lieu of OLE
              requirement.

## ANSWER:

Defendants deny the allegations in Paragraph No. 55.

### KS+A Southbury Elementary Plans

## ALLEGATION NO. 56:

The below excerpt from specification section 16701 of the copyrighted KS+A Southbury Elementary Plans includes a typographical error whereby the "b" in "building" should be capitalized to conform with the style of the rest of section 1.02.

1.01   SUMMARY

A.   Section Includes:
1.   Cable Hangers.
2.   Ladder Rack.
3.   Support Hardware.

1.02   REFERENCES

A.   NECA - National Contractors Association.

B.   ANSI/NFPA 70 - National Electrical Code.

C.   EIA/TIA 569: Commercial building Standard for Pathways and Spaces.

D.   NEMA VE1 - Metallic Cable Tray Systems.

E.   NEMA VE2 - Metal Cable Tray Installation Guidelines.

## ANSWER:

Defendants are without sufficient information to form a belief as to the truth of whether the excerpt shown in Paragraph No. 56 comes from specification section 16701 of the KS+A Southbury Elementary Plans and whether the "b" in building should be capitalized and therefore denies these allegations. Defendants deny the remaining allegations in Paragraph No. 56.

**Bank Branch Specification**

## ALLEGATION NO. 57:

In comparison, not only does this excerpt from Defendants' Bank Branch Specification section 16705 also fail to capitalize the "b" in "building," but it actually refers to "Section 16740-Voice, Data and Video System"-the KS+A specification section number reference-when Defendants' Voice, Data and Video system section is actually found at reference number 16715. Indeed, Defendants do not even have a section 16740 in the Bank Branch Specification.

- 34 -

1.1     SUMMARY

    A.     Section includes:
        1.     Cable Hangers.
        2.     Support Hardware.

    B.     Related sections:
        1.     16740 – Voice, Data and Video System.


1.2     REFERENCES

    A.     EIA/TIA 569: Commercial building Standard for Pathways and Spaces.

    B.     NECA - National Contractors Association.

    C.     NFPA 70 - National Electrical Code.

    D.     Underwriters Laboratories, Inc (UL).

**ANSWER:**

Defendants admit that the excerpt inserted in Paragraph No. 57 uses a small "b" in Section 1.2(a) and that the excerpt also refers to 16740 – Voice, Data and Video System. Defendants deny that this evidences any infringement of any KS+A copyright and deny the remaining allegations in Paragraph No. 57.

**ALLEGATION NO. 58:**

Upon information and belief, other projects, plans, specifications and drawings by Defendants include the KS+A Copyrighted Works.

**ANSWER:**

Defendants deny the allegations in Paragraph No. 58.

**COUNT I:  COPYRIGHT INFRINGEMENT**
**17 U.S.C.  § 501, *et seq.***

**ALLEGATION NO. 59:**

KS+A incorporates by reference and realleges each allegation set forth in paragraphs 1 through 58 above as if fully set forth herein.

**ANSWER:**

Defendants incorporate by reference and reallege their answers to paragraphs 1 through 58 above as if fully set forth herein.

**ALLEGATION NO. 60:**

KS+A is the exclusive owner of all of the copyrights in the original KS+A Copyrighted Works. As a matter of law under 17 U.S.C. § 410(c), KS+A's Certificates of Registration (Exhibits A, D through K) are "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." Pursuant to these Registrations, KS+A's exclusive ownership shall be presumed.

**ANSWER:**

Defendants deny the allegations in Paragraph No. 60.

**ALLEGATION NO. 61:**

KS+A has complied in all material respects with the Copyright Act of 1976, as amended, and all other laws governing copyright, including registration of such works.

**ANSWER:**

Defendants deny the allegations in Paragraph No. 61.

**ALLEGATION NO. 62:**

During the relevant period, Defendants Cordogan and Mr. Kim had access to the KS+A Copyrighted Works, or relevant portions thereof.

**ANSWER:**

Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 62 in that the terms "relevant period" and "relevant portions" are not defined and, therefore, deny the same.

Answering further, Mr. Kim admits that he had access to the KS+A Copyrighted Works during his employment with KS+A. Mr. Kim further avers that he had access to the works claimed by KS+A to be KS+A Copyrighted Works prior to his employment with KS+A and after

- 36 -

his employment with KS+A as such works were and continue to be readily available in the public domain.

Answering further, CCA avers that it had access to works claimed by KS+A to be KS+A Copyrighted Works before, during, and after Mr. Kim's employment with KS+A as such works were and continue to be readily available in the public domain.

## ALLEGATION NO. 63:

Defendants, without permission or consent of KS+A, knowingly and willfully have copied, reproduced, prepared derivative works based on, and otherwise used, and continue to copy, reproduce, prepare derivative works based on, and otherwise use, one or more of the KS+A Copyrighted Works for their own benefit.

## ANSWER:

Defendants deny the allegations in Paragraph No. 63.

## ALLEGATION NO. 64:

By way of example, the Vaughn Center Drawings and Aurora Police Station Drawings (collectively, "Infringing Drawings") are substantially similar, if not nearly identical, to the KS+A Electrical Standards Drawings and the KS+A Symbols and Abbreviations.

## ANSWER:

Defendants deny the allegations in Paragraph No. 64.

## ALLEGATION NO. 65:

Likewise, the Bank Branch Specification, for example, is substantially similar, if not nearly identical, to certain of the KS+A Specification Sections and KS+A Project Plans.

## ANSWER:

Defendants deny the allegations in Paragraph No. 65.

## ALLEGATION NO. 66:

To the extent that Cordogan did not directly infringe the KS+A Copyrighted Works, Cordogan knowingly, recklessly and willfully induced the infringement of, or contributed to the infringement of, KS+A's exclusive rights in one or more of the KS+A Copyrighted Works. Cordogan had a direct financial benefit in the infringing activities, and had the right and/or ability to supervise and/or control those activities, rendering it vicariously liable.

CHICAGO/#1858483

**ANSWER:**

CCA denies the allegations in Paragraph No. 66.   Mr. Kim is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 66 and therefore denies these allegations.

**ALLEGATION NO. 67:**

The infringing acts by Defendants have been willful and intentional, and in disregard of and indifferent to the rights of KS+A.

**ANSWER:**

Defendants deny the allegations in Paragraph No. 67.

**ALLEGATION NO. 68:**

As a direct and proximate result of Defendants' infringement of KS+A's Copyrighted Works, KS+A has suffered, and will continue to suffer, irreparable harm, damages and economic injury.   Absent an appropriate injunction, KS+A will continue to suffer irreparable and immeasurable harm.

**ANSWER:**

Defendants deny the allegations in Paragraph No. 68.

**COUNT II:  VIOLATION OF FEDERAL COMPUTER FRAUD AND ABUSE ACT
18 U.S.C. § 1030, *et seq.***

Defendants have moved to dismiss Count II and make no answer with respect to paragraphs 69 thru 75.

**CLAIMS ARISING UNDER STATE AND COMMON LAW PRINCIPAL FACTS**

Defendants have moved to dismiss the state law claims in Counts III thru VII and make no answer with respect to paragraphs 76 thru 108.

**AFFIRMATIVE DEFENSES**

As and for their affirmative defenses to KS+A's copyright infringement claim in Count I of the Second Amended Complaint, Defendants state as follows without waiver of the obligation

of KS+A to plead and prove each and every element of its claim:

## First Affirmative Defense

Counts II through VII of KS+A's Second Amended Complaint fail to state a cause of action upon which relief may be granted.

## Second Affirmative Defense

KS+A's copyright claim is barred in whole or in part by the statute of limitations set forth in the U.S. Copyright Act, 17 U.S.C. § 507(b).

## Third Affirmative Defense

KS+A's copyright claim with respect to the KS+A Project Plans, KS+A Electrical Standards Drawings and KS+A Symbols and Abbreviations is barred because the amendments to its copyright registrations fail to comply with the U.S. Copyright Act and, therefore, are defective as a matter of law. As a result, KS+A lacks the jurisdictional prerequisite of a valid copyright registration to bring its copyright claim.

## Fourth Affirmative Defense

KS+A's copyright claim in its entirety is barred because the amendments to its copyright registrations were procured by fraud upon the copyright office and, therefore, are invalid. As a result, KS+A lacks the jurisdictional prerequisite of a valid copyright registration to bring its copyright claim.

## Fifth Affirmative Defense

KS+A's copyright claim is barred in whole or in part by the doctrine of merger as the KS+A Copyrighted Works, as defined in KS+A's Second Amended Complaint, reflect ideas, procedures, methods of operation, systems, processes or concepts that can be expressed in limited ways with little possible variation.

CHICAGO/#1858483

### Sixth Affirmative Defense

KS+A's copyright claim is barred in whole or in part by the doctrine of functionality to the extent the KS+A Copyright Works, as defined in KS+A's Second Amended Complaint, reflect functional features, aspects and ideas that are not copyrightable under the U.S. Copyright Act, 17 U.S.C. § 101 *et seq.*

### Seventh Affirmative Defense

KS+A's copyright claim is barred in whole or in part because the KS+A Copyright Works, as defined in KS+A's Second Amended Complaint, lack sufficient creativity or originality to be copyrightable under the U.S. Copyright Act, 17 U.S.C. § 101 *et seq.*

### Eighth Affirmative Defense

KS+A's copyright claim is barred in whole or in part to the extent the KS+A Copyright Works, as defined in KS+A's Second Amended Complaint, are in the public domain.

### Ninth Affirmative Defense

KS+A's copyright claim is barred in whole or in part because any use by Defendants of individual items within KS+A's Copyrighted Works by Defendants was de minimis.

### Tenth Affirmative Defense

KS+A's copyright claim against CCA is barred in whole or in part because CCA was an innocent infringer.

### COUNTERCLAIM

As and for their Counterclaim against KS+A, Defendants state as follows:

### NATURE OF ACTION

1.     This Counterclaim arises from KS+A's filing of a meritless trade secret misappropriation claim against Defendants under the Illinois Trade Secrets Act ("ITSA") (765

ILCS 1054/1 et seq.), which KS+A filed and pursued in bad faith and without justification or cause.

## THE PARTIES

2.     CCA is an Illinois corporation and a licensed full service architectural, planning and engineering firm, with its principal place of business at 960 Ridgeway Avenue, Aurora, Illinois 60506.

3.     Mr. Kim is a licensed professional engineer who resides at 780 Meadowsedge Lane, Aurora, Illinois 60506.

4.     KS+A is an Illinois corporation and a licensed professional design firm engaged in the practice of architecture and engineering, with its principal place of business at 901 N. Batavia Avenue, Batavia, Illinois 60510.

## JURISDICTION AND VENUE

5.     This Court has supplemental jurisdiction over this counterclaim pursuant to 28 U.S.C. § 1367(a).

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the counterclaim arose in this District and a substantial part of events giving rise to the counterclaim occurred in this District.

## COUNT I
## BAD FAITH ILLINOIS TRADE SECRETS ACT CLAIM

7.     Defendants restate and re-allege paragraphs 1 through 6 as and for this paragraph 7 of Count I.

8.     KS+A filed a Complaint for Injunctive Relief and Damages ("Complaint") against Defendants on or about March 14, 2008.  The Complaint included a claim in Count II for

CHICAGO/#1858483

violation of the Illinois Trade Secret Act, 765 ILCS 1065/1 *et seq.* ("ITSA") (the "trade secret claim").

9.      The trade secret claim alleged that KS+A's so-called "Design Components," including certain common abbreviations, well-known electrical symbols, and a handful of detail drawings of common building features, constitute protectable trade secrets and were misappropriated and misused by Defendants.

10.      Based on its trade secret claim, KS+A sought to recover compensatory damages, pre- and post-judgment interest, punitive damages, costs, attorney fees and injunctive relief to prevent Defendants from further misappropriating KS+A's purported trade secrets.

11.      The trade secret claim had no legal basis or factual support and was objectively specious because, among other defects, the Design Components were not secret. KS+A does not mark the Design Components "confidential." KS+A discloses the Design Components to third parties without requiring confidentiality agreements. Nor does KS+A require employees to whom it discloses the Design Components—including Mr. Kim—to sign confidentiality agreements.

12.      KS+A even acknowledged in the Complaint that the Design Components are not secret to the extent KS+A alleged that the Design Components are incorporated into publicly filed plans, and that such plans are disclosed to contractors, subcontractors, public entities required to review such plans prior to the grant of building permits, and others who may need to review the plans during the process of constructing the building. KS+A also attached the Design Components to the Complaint and publicly filed the Complaint with the Design Components attached thereto.

13.     In an effort to avoid incurring unnecessary legal fees, counsel for Defendants sent a letter to KS+A's counsel on March 26, 2008 pursuant to Federal Rule of Civil Procedure 11 ("Rule 11") demanding that KS+A withdraw the trade secret claim. The Rule 11 letter explained the deficiencies of KS+A's trade secret claim and included citations to case law demonstrating that the trade secret claim lacked merit.

14.     KS+A's counsel responded to the Rule 11 letter on April 2, 2008, and indicated that KS+A would not withdraw the trade secret claim.

15.     Because KS+A refused to withdraw its trade secret claim, Defendants were forced to incur unnecessary legal fees to prepare a motion to dismiss, which Defendants filed on or about April 7, 2008.

16.     Thereafter, rather than respond to the motion to dismiss and to avoid entry of an order dismissing the trade secret claim, KS+A sought and obtained leave to file an amended complaint and, on or about June 3, 2008, filed a First Amended Complaint for Willful Copyright Infringement, Violation of the Computer Fraud and Abuse Act, and Illinois State and Common Law Causes of Action Seeking Injunctive Relief and Damages ("First Amended Complaint"). KS+A did not re-file the trade secret claim in the First Amended Complaint.

17.     KS+A has since filed a Second Amended Complaint for Willful Copyright Infringement, Violation of Computer Fraud and Abuse Act, and Illinois State and Common Law Causes of Action ("Second Amended Complaint"), which KS+A filed on or about October 8, 2008. The Second Amended Complaint does not include a trade secret claim.

18.     Section 5 of the ITSA authorizes an award of attorneys' fees to the prevailing party if a trade secret claim is made in bad faith.

19.     KS+A made its trade secret claim in bad faith because, notwithstanding that the facts foreclosed any possibility that the Design Components are "secret" within the meaning of, and as required by, Section 2(d) of the ITSA, KS+A filed and pursued the trade secret claim for the improper purpose of harassing and threatening Defendants with a temporary restraining order and preliminary injunction, preventing lawful competition by Defendants, and interfering with Defendants' business and employment relationships.  KS+A's bad faith is further evidenced by its unwillingness to withdraw its knowingly meritless trade secret claim, and instead forcing Defendants to have to research and file a motion to dismiss this specious claim.

20.     Defendants constitute prevailing parties for purposes of the Section 5 of the ITSA because KS+A withdrew its trade secret claim solely to avoid an adverse ruling on the merits once Defendants' filed their motion to dismiss.  Defendants also constitute prevailing parties to the extent the Court determines that KS+A filed and pursued its trade secret claim in bad faith.

21.     As a direct and proximate result of KS+A's bad faith trade secret claim, Defendants have been required to expend unnecessary attorneys' fees to defend against the claim.

22.     Defendants are therefore entitled to an award of their attorneys' fees pursuant to Section 5 of the ITSA.

**WHEREFORE**, Defendants respectfully request the Court to enter judgment in their favor on Count I, and award:  (i) an amount equal to the attorneys' fees that they have been forced to expend defending against KS+A's trade secret claim; (ii) costs of bringing this counterclaim; and (iii) such further relief as is just and proper.

- 44 -

Respectfully submitted,

**CORDOGAN, CLARK & ASSOC., INC.
and JEYEONG KIM**


By: /s/ Anthony J. Ashley

Anthony J. Ashley (6209519)
Frederic T. Knape (6256217)
Cindy S. Stuyvesant (6279881)
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601-1003
312/609-7500
312/609-5005 (facsimile)

DATED:  November 7, 2008