# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

KLUBER SKAHAN & ASSOCIATES,
INC., an Illinois Corporation,

     Plaintiff,

         v.

CORDOGAN, CLARK & ASSOC., INC.,
an Illinois Corporation, and JEYEONG JIM,
an individual,

     Defendants.

No. 08-cv-1529
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

## I. BACKGROUND

      Kluber Skahan & Associates, Inc. ("KS+A") is an architectural firm based in Batavia,

Illinois. It has sued a competing architectural firm, Cordogan, Clark & Assoc., Inc.

("Cordogan"), and a former engineering intern, Mr. Jeyeong Kim ("Kim"), who left KS+A to

join Cordogan. KS+A's seven-count complaint arises out of Defendants' alleged acquisition and

misappropriation of numerous of its copyrighted works, including architectural plans, designs,

and other specifications. The second amended complaint alleges: (1) copyright infringement

under the Copyright Act (Count I), 17 U.S.C. §§ 101-1332; (2) violation of the Computer Fraud

and Abuse Act ("CFAA") (Count II), 18 U.S.C. § 1030; (3) consumer fraud under the Illinois

Consumer Fraud and Deceptive Business Practice Act (Count III), 815 ILCS §§ 505/1-505/12.;

(4) unfair and deceptive trade practices under the Uniform Deceptive Trade Practices Act (Count

IV), 815 ILCS §§ 510/1-510/5.; (5) common law unfair competition (Count V); (6) common law

breach of contract (Count VI) against Kim only; and (7) common law tortious interference with

contractual relations (Count VII) against Cordogan only. Before the court is Defendants' motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), which argues that: (1) the copyright infringement claim should be dismissed to the extent that it concerns works covered by allegedly invalid copyright registrations; (2) the CFAA claim should be dismissed as falling beyond the statute's two year statute of limitations; (3) the state and common law claims for consumer fraud, deceptive trade practices, and unfair competition should be dismissed because they are preempted by the Copyright Act's preemption clause; (4) the consumer fraud claim does not state a cause of action under the Consumer Fraud Act; (5) Plaintiff's allegations do not support its claim under the Deceptive Trade Practices Act or its unfair competition claim; and (6) the alleged contract does not support either the breach of contract claim or the tortious interference with contract claim because the contract lacks consideration. For the following reasons, Defendants' motion is granted in part and denied in part.

## II. STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint, not the merits of a case. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). The defendants' motion to dismiss should be granted only if the plaintiff cannot prove any set of facts in support of its claim that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Furthermore, I must construe the complaint "in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." *See Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005). Dismissal is warranted only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*County of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 817 (7th Cir. 2006). That said,

plaintiff's "obligation to provide the grounds of his entitlement for relief requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Factual allegations must be enough to raise a right to relief above the speculative level." *Bell*

*Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).

## III. STATEMENT OF RELEVANT FACTS

KS+A is an Illinois corporation and is a licensed professional design firm engaged in the

practice of architecture and engineering. Cordogan is a competing architecture firm. From April

15, 2002, through April 12, 2004, KS+A employed Kim as an engineering intern. KS+A alleges

that Kim became an employee of Cordogan on or before April 5, 2004, at least one week before

he left KS+A.[1] KS+A's claims center around Defendants' alleged unauthorized acquisition,

infringement of, and continued misappropriation of KS+A's copyrighted works.

### A. KS+A's Copyrighted Work

Two categories of content copyrighted by KS+A are at issue in the defendants' motion to

dismiss. They are: (1) works in the KS+A Electrical Standards Library; and (2) the KS+A

Project Plans.[2]

### 1. The KS+A Electrical Standards Library

The KS+A Electrical Standards Library is a compiled library of original technical

engineering drawings (the "KS+A Electrical Standards Drawings") and symbols and

abbreviations used in electrical engineering (the "KS+A Symbols and Abbreviations"). KS+A

---

[1] Kim left Cordogan some time in 2006 and is presently employed by an unnamed third party.
[2] In addition to the categories of copyrighted works at issue in this opinion are the KS+A Specification Sections.
The defendants have filed a separate answer regarding these works, so they need not be treated here.

continues to update and add to its Electrical Standards Library. KS+A uses these works in the creation of its architectural and engineering plans, drawings, and designs. Indeed, KS+A alleges that the KS+A Electrical Standards Drawings and the KS+A Symbols and Abbreviations are integral components of a successful construction project because they increase job efficiency and reduce the time needed to create the plans, drawings and specifications needed for its building projects. KS+A has spent considerable time, money and effort to create, develop, and maintain these works. KS+A obtained a copyright registration in the KS+A Symbols and Abbreviations in 2007.[3] KS+A alleges that it subsequently sought to change the content of that work, so on May 21, 2008, KS+A submitted an application for registration of the KS+A Symbols and Abbreviations on May 21, 2008, which the Copyright Office registered on May 22, 2008.[4] In its application for the 2008 KS+A Symbols and Abbreviations registration, KS+A indicated that it filed this new registration as an updated version of the work covered by the 2007 registration. Pl.'s Resp. to Def.'s Mot. to Dismiss 2d Am. Compl. (Doc. 52) Ex. 2.

Similarly, KS+A also obtained a copyright registration in the KS+A Electrical Standards Drawings in 2007.[5] KS+A sought to change the nature of this work in May 2008, so it obtained a new registration at that point for the KS+A Electrical Standards. It did this once more on September 24, 2008, obtaining another copyright registration on September 29, 2008.[6]

---

[3] Copyright registration VAu 739-704, dated January 11, 2007. Pl.'s Resp. to Def.'s Mot. to Dismiss 2d Am. Compl. (Doc. 52) Ex. 1. The title of the work that KS+A references in its pleadings is "Grande Park Elementary School Plans and Project Manual – Under Construction." *Id*. The nature of this work is listed as "architectural work." *Id*.

[4] Copyright registration VAu 960-756, dated May 21, 2008. Pl.'s Resp. to Def.'s Mot. to Dismiss 2d Am. Compl. (Doc. 52) Ex. 2. The title of the work that KS+A references in its pleadings is "KS+A Symbols and Abbreviations." *Id*. The nature of this work is listed as "Technical Drawing of Symbols and Text." *Id*.

[5] In its pleadings, KS+A references the VAu 739-704 registration, dated January 11, 2007 and mentioned *supra* note 3.

[6] Copyright registration VAu 967-727, dated September 29, 2008. Pl.'s Resp. to Def.'s Mot. to Dismiss 2d Am. Compl. (Doc. 52) Ex. 7. The title of the work that KS+A references in its pleadings is "KS+A Electrical Standards Drawings." *Id*. The nature of this work is listed as "Technical drawings and text." *Id*. This most recent registration reflects that it pertains to an updated version of the two previous registrations covering the KS+A Electrical

Every time that KS+A updated its registrations for the KS+A Symbols and Abbreviations and the KS+A Electrical Symbols and Abbreviations, it used Copyright Office form VA. This is the form used to file new registrations pertaining to works in the visual arts.

### 2. The KS+A Project Plans

The KS+A Project Plans consist of numerous original project plans, including technical drawings and project manuals. The work covered under this heading includes the drawings and project manuals for various entire construction projects. By way of example in its complaint, KS+A specifically identifies as infringed the following KS+A Project Plans: (1) the Park District Southbury Plans; (2) the New (Plank) Junior High School Plans and Project Manual; (3) the New (Ashcroft) Junior High School Architectural Plans; (4) the Grande Park Elementary School Plans and Project Manual; and (5) the New Elementary Schools 1 and 2 (Southbury Elementary) Architectural Plans. 2d Am. Compl. ¶¶ 22-26.

Each of the five project plans is protected by copyright registrations. In all five cases, KS+A obtained a copyright registration for the project plan in January 2007.[7] These initial registrations reflect the nature of the work contained therein as "Architectural Work." Subsequently, in May 2008, KS+A sought to change the nature of the work for each of the five project plans by filing Copyright Office Form CA with Register of Copyrights. Form CA is the form used to file supplemental registrations that correct or update existing registrations. *See* Pl.'s Resp. to Def.'s Mot. to Dismiss 2d Am. Compl. (Doc. 52) Ex. 3 (Copyright Office Form CA). On May 21, 2008, the United States Register of Copyrights granted KS+A a Supplementary

---

Standards Drawings.

[7] On January 5, 2007, the United States Register of Copyrights granted KS+A Certificates of Registration for registrations numbered VAu 740-105, VAu 734-219, and VAu 739-071. 2d Am. Compl. ¶¶ 22-24. On January 11, 2007, the Register of Copyrights granted KS+A Certificates of Registration for registrations numbered VAu 739-704 and VAu 739-070. *Id*. ¶¶ 25-26.

Certificate of Registration for each of the five project plans.[8]  In each of the five supplemental

registrations for the project plans, the correction stated is that the nature of the work should be

"Architectural Plans," and not "Architectural Work" as originally filed in 2007.  *See*, *e.g.*, 2d

Am. Compl. Ex I (reflecting as the incorrect information from the basic registration "The Nature

of This Work was provided as Architectural Work," and reflecting as the corrected information,

"The Nature of This Work should be Architectural Plans").

## B. The Parties' Actions

As an employee of KS+A, Kim was exposed and had access to KS+A's copyrighted

works.  To the extent that these works are stored electronically, KS+A employed passwords and

other security measures to protect its intellectual property.  KS+A alleges that during the course

of Kim's employment with KS+A, his authorized access to such electronic content was limited to

assisting Kluber in drawing and entering the KS+A Electrical Standards and Drawings and

KS+A Symbols and Abbreviations into KS+A's proprietary Electrical Standards Library.  At no

point, KS+A alleges, was Kim authorized to copy or use for his own benefit or the benefit of a

third party KS+A's copyrighted works.  Kim's authorization to the KS+A Project Plans was

similarly limited.

On Kim's last day working for KS+A, April 12, 2004, KS+A founder Michael T. Kluber

conducted an exit interview with Kim.  Plaintiff alleges that during the exit interview, Kim was

reminded that he was not to take KS+A's intellectual property, including "plans, specs, and work

product," with him upon resigning.  *See* 2d Am. Compl. ¶ 78.  Kim was informed that doing so

would be "punishable by law."  *See id*.  KS+A alleges that Kluber and Kim memorialized Kim's

---

[8] The supplemental registrations were numbered VAu 756-017, VAu 756-019, VAu 756-018, VAu 756-021, and
VAu 756-020, respectively.  *Id*. ¶¶ 22-26.

post-employment obligations in an exit interview contract.  *See* 2d Am. Compl. Ex. O.  A handwritten section of the exit interview contract reads, "MK requested reimbursement for PE exam and training [sic] $180 + 595.  Jey Kim agrees to pay."[9]  *Id*.  Although this language indicates that Kim was obliged to repay these debts to KS+A under the contract, KS+A alleges that it released Kim from his obligations to repay certain other expenses owed to the firm during the exit interview.  Both Kluber and Kim signed what is alleged to be the exit interview contract.  *See id*.

According to Plaintiff, Kim understood his duty not to take copies of KS+A's intellectual property and confidential information upon his departure from KS+A, and yet, despite the agreement, Kim allegedly took copyrighted plans, specs and work product, and various other materials, to his new employer Cordogan, at Cordogan's persuasion.  Although Plaintiff does not yet know the exact date upon which Kim took its copyrighted works, it alleges that Kim did so by accessing its protected computers, either without authorization or beyond the scope of his authorization, and copying, transferring, and/or downloading its copyrighted works.  Kim allegedly did this while acting as Cordogan's agent and with the intent to defraud.

According to KS+A, shortly after Kim left KS+A to work for Cordogan, Defendants used and reproduced numerous of KS+A's copyrighted works in preparing Cordogan's documents, designs, plans, drawings, and specifications.  KS+A alleges numerous examples of substantial similarities between its work and Cordogan's, including references to identical typographical errors.  Plaintiff maintains that Defendants used Plaintiff's copyrighted works knowingly and without KS+A's consent, thus forming the basis of KS+A's copyright infringement claim.

---

[9] Presumably, "MK" stands for Michael Kluber.

KS+A alleges that Defendants have and continue to copy, reproduce, and use its copyrighted

works, causing KS+A to suffer harm.  These allegedly infringed works are KS+A's copyrighted

architectural plans.  Further, by selling architectural services that incorporate KS+A copyrighted

material, Plaintiff alleges that Defendant perpetrated various forms of fraud, deceptive trade

practices, and unfair competition against members of the industry and the consuming public.

KS+A commenced this action on March 14, 2008.

## IV.  DISCUSSION

### A. Copyright Infringement

In their motion to dismiss, Defendants argue that Plaintiff's copyright infringement claim

should be dismissed to the extent that it asserts rights over invalid supplemental copyright

registrations.  Defendants assert that the 2008 registrations over the KS+A Standards Drawings,

the KS+A Symbols and Abbreviations, and the KS+A Project Plans all constitute invalid

supplemental copyright registrations.  Therefore, Defendants argue, because 17 U.S.C. § 411(a)

of the Copyright Act requires valid copyright registration as a condition precedent to the

commencement of an infringement suit, this court lacks subject matter jurisdiction over the

copyright infringement claim.

Defendants are correct in asserting that valid copyright registration is required before an

infringement suit may be filed.  *See* 17 U.S.C. § 411(a) ("no civil action for infringement of the

copyright in any United States work shall be instituted until preregistration or registration of the

copyright claim has been made in accordance with this title"); *Chicago Bd. of Educ. v.

Substance, Inc.*, 354 F.3d 624, 631 (7th Cir. 2003) ("Although a copyright no longer need be

registered with the Copyright Office to be valid, an application for registration must be filed

before the copyright can be sued upon.").  However, I cannot at this time fond the registrations at issue to be invalid supplemental registrations.  Therefore, for the following reasons, I deny Defendants' motion to dismiss Plaintiff's copyright infringement claim, thereby retaining jurisdiction.

### 1. The Registrations for the KS+A Electrical Standards Drawings and KS+A Symbols and Abbreviations Are New Registrations

Defendants characterize the 2008 registrations over the KS+A Electrical Standards Drawings and the KS+A Symbols and Abbreviations as impermissible supplemental registrations.  Yet taking Plaintiff's allegations as true, as I must at this stage in the litigation, KS+A has sufficiently pled that the copyright registrations over these works are valid new registrations.  KS+A owned a valid copyright in these works under its 2007 registration.  As discussed above, it subsequently filed for new registrations over the KS+A Electrical Standards Drawings and the KS+A Symbols and Abbreviations.  These applications sought to change the content of the works from the 2007 registration and relied on the 2007 registration as a previous version of the content claimed in the 2008 applications.  In so applying, KS+A filed Copyright Office Form VA, which is the form required to apply for new copyright registrations in the visual arts.  *See* 37 C.F.R. § 202.3(b)(2) (setting out the forms to be used when filing new basic copyright registrations).  The United States Copyright Register conferred new registrations for the KS+A Electrical Standards Drawings and the KS+A Symbols and Abbreviations on September 29, 2008, and May 22, 2008, respectively.  Accordingly, I deny Defendants' motion to dismiss on this ground.[10]

---

[10]Defendants have not asserted, neither of the parties have briefed, and so I will not decide whether KS+A changing the nature of the works from "Architectural Work" in the 2007 registration to "Technical Drawings and Text" in the new 2008 registrations calls this court's jurisdiction into question under 17 U.S.C. § 411(a).  Regulations require that

## 2. The Supplemental Registrations for the KS+A Project Plans Are Proper

With regard to the KS+A Project Plans, Defendants assert that KS+A's supplemental

registrations are invalid, asserting that by making corrections to its Project Plans registrations,

KS+A impermissibly attempted to change the nature or content of the original copyright.

Section 408(d) of the Copyright Act provides the relevant statutory language concerning

corrections and amplifications of copyright registrations:

> The Register may also establish, by regulation, formal procedures for
> the filing of an application for supplementary registration, to correct
> an error in a copyright registration or to amplify the information given
> in a registration.  Such application . . . shall clearly identify the
> registration to be corrected or amplified.  The information contained
> in a supplementary registration augments but does not supersede that
> contained in the earlier registration.

17 U.S.C. § 408(d).  With regard to the "errors" permitted to be corrected under § 408(d), the

legislative history the Copyright Act of 1976 and the regulations implementing the Act both

indicate: "The 'error' to be corrected under subsection (d) is an error by the applicant that the

Copyright Office could not have been expected to note during its examination of the claim[.]"

H.R. Rep. No 94-1476, at 155 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 5659, 5771;

37 C.F.R. § 201.5(b)(2)(i) ("A correction is appropriate if information in the basic registration

was incorrect at the time that basic registration was made, and the error is not one that the

Copyright Office itself should have recognized[.]").  Yet the regulations implementing § 408(d)

---

"[w]here dual copyright claims exist in technical drawings and the architectural work depicted in the drawings, any claims with respect to the technical drawings and architectural work must be registered separately."  *See* 37 C.F.R. § 202.11(c)(4).  Although Defendants argue that separate registrations are required for architectural works and plans in the context of asserting that KS+A's registrations are invalid supplemental registrations, nowhere do they suggest that KS+A filing a *new* registration for architectural plans obtained after the commencement of the suit offends § 411(a) of the Copyright Act when that registration claims a registration for an architectural work as a previous registration.  The defendants do not press the question of whether independent registrations for architectural plans (here, the KS+A Electrical Standards Drawings and KS+A Symbols and Abbreviations) needed to exist in addition to the earlier 2007 architectural work registration before the commencement of this suit.

proscribe the scope of permissible supplements. Among other restrictions, supplementary registration is not appropriate "to reflect changes in the content of a work[.]" 37 C.F.R. § 201.5(b)(2)(iii)(B). Thus, KS+A may use supplemental registrations to correct errors in its original registrations to the extent that doing so does not violate restrictions upon such supplemental registration, as set out by 37 C.F.R. § 201.5(b)(2).

Here, KS+A sought supplemental registration to change the nature of the KS+A Project Plans registered in 2007 from "Architectural Work" to "Architectural Plans." KS+A alleges that these supplemental registrations "merely correct inadvertent errors in the 'nature of authorship' and 'nature of this work' categories of its original registrations." Pl.'s Resp. to Def.'s Mot. to Dismiss 2d Am. Compl. (Doc. 52) 5. Although there is some concern that KS+A changed its registrations in this way as a tactic to facilitate suit, at this stage in the litigation I must accept KS+A's well-pleaded factual allegations as true.[11] Since the supplement purports merely to correct the nature of the work, it stands to reason that the supplemental registration does not impermissibly alter the content protected by the original registration. Because KS+A has pled that the correction it made is of the nature intended to be corrected by supplemental registration, I deny Defendants' motion to dismiss on this ground.

**B. Computer Fraud and Abuse Act Claim**

KS+A alleges in Count II that Defendants violated the CFAA when Kim gained access to KS+A's protected computers, either beyond his authorization or without authorization, to copy and download KS+A's protected works. In their motion to dismiss, Defendants argue that KS+A's CFAA claim is time barred by the statute. For the following reasons, I deny

---

[11] If subsequent discovery suggests that the KS+A's supplemental registrations were motivated by impermissible justifications and not to correct "inadvertent error" as alleged by the plaintiff and required by the Copyright Act, then the landscape of my analysis may change.

Defendants' motion to dismiss the CFAA claim at this stage. Yet I decline to adopt KS+A's proposed interpretation of § 1030(g) and will not apply equitable tolling to the CFAA claim.

Although the CFAA is primarily a criminal statute, it also provides a private right of action: "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g). Section 1030(a) lists the actions giving rise to such violations. Additionally, plaintiffs must allege the existence of at least one of the five numbered clauses of § 1030(c)(4)(A)(i). 18 U.S.C. § 1030(g). "In short, a person suing under section 1030(g) must prove: (1) damage or loss (2) by reason of (3) a violation of some other provision of section 1030, and (4) conduct involving one of the factors set forth in section [1030(c)(4)(A)(i)]." *Motorola, Inc. v. Lemko Corp.*, 2009 U.S. Dist. LEXIS 10668, *10-*11 (N.D. Ill. Feb. 11, 2009).

KS+A alleges that Defendants violated § 1030(a)(4), one of the violations giving rise to a private right of action through § 1030(g), when Kim, while purportedly acting as an agent of Cordogan, accessed KS+A's protected computers to download and copy various of KS+A's copyrighted works, either without authorization or in excess of his authorized access.[12] It is unclear from Plaintiff's complaint and subsequent pleadings when Kim's allegedly violating access took place. The complaint does reflect that Kim had access to KS+A's copyrighted works during his employment with that firm, from April 15, 2002, to April 12, 2004. 2d Am. Compl. ¶¶ 30-31. But Plaintiff does not explain whether Kim had access to its computer systems or to

---

[12] A person violates § 1030(a)(4) if he "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period." 18 U.S.C. § 1030(a)(4). Plaintiff claims the existence of § 1030(c)(4)(A)(i)(I), alleging that it suffered a loss of greater than $5,000 in a 1-year period.

the copyrighted works after he left its employ on April 12, 2004. Nevertheless, as a result of the defendants' alleged actions, KS+A claims that it suffered harms from "the unauthorized use of the KS+A Copyrighted Works, a loss of business goodwill, the cost and lost time spent investigating Defendants' conduct and the money spent to upgrade KS+A's computer system to remedy Defendants' conduct and prevent a future occurrence." *Id.* at ¶ 75.

### 1. The CFAA's Two-Year Limitation Period

The CFAA contains a two-year limitation period within which plaintiffs must file suits under the Act. Beyond conferring the private right of action described above, § 1030(g) explains that: "[n]o action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage." 18 U.S.C. § 1030(g). Congress' language indicates that a plaintiff's CFAA claim can survive only if the plaintiff commences suit: (1) within two years of a defendant's alleged violation; or (2) within two years of the plaintiff discovering damage. *Id.* Congress' first limitation, that the complaint must be filed within two years of the violation, is a factual question that turns on when the alleged violation occurred. Because questions remain as to when Kim's unauthorized access into the protected computers took place, more discovery is needed before this claim can be dismissed as a matter of law. As for Congress' second limitation, that the claim must be filed within two years of the plaintiff discovering damage, Plaintiff has not presented any evidence of damage following the alleged incident. Because the injury-discovery limitation does not permit a distinct two-year limitation tolled by the discovery of loss, this part of the claim must be dismissed as a matter of law. Accordingly, because Plaintiff may have commenced this suit within two years of the allegedly violating action, I must deny Defendants' motion to dismiss the CFAA claim so that questions of fact can be resolved.

**a. Discovery of "Loss" Does Not Toll the § 1030(g) Injury-Discovery Limitation**

In spite of the language of § 1030(g), KS+A asks that its CFAA claim be allowed to escape the two-year limitation by treating its discovery of loss as comparable to the "discovery of damage" limitation in the statute. Because accepting KS+A's proposal would require an inapt reading of the statute, I decline to adopt it. Instead, I find that the language of 18 U.S.C. § 1030 favors a strict reading of the injury-discovery limitation that applies only to discovery of damage.

Congress defined "damage" and "loss" as separate harms for the purposes of § 1030. While the term "damage" "means any impairment to the integrity or availability of data, a program, a system, or information," 18 U.S.C. § 1030(e)(8), the term "loss" "means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service[.]" 18 U.S.C. § 1030(e)(11). Beyond the difference in definition, the terms "damage" and "loss" are conceptually distinct: whereas "damage" contemplates harms to data and information, "loss" refers to monetary harms. *See Patrick Patterson Custom Homes, Inc. v. Bach*, 586 F. Supp. 2d 1026, 1035-37 (N.D. Ill. 2008) (finding that the plaintiff properly alleged damage where it claimed "permanent deletion and shredding of substantial files" and properly alleged loss where it claimed monetary harms of costs incurred in responding to the unauthorized access).

Injuries of the type KS+A alleges to have endured constitute "losses," and not "damages," under the CFAA. Plaintiff does not allege that it suffered any damage as that term is defined in the CFAA; the harms it alleges to have endured are purely monetary and do not contemplate the

destruction of or loss of access to any of its own data or information. *See Garelli Wong &*

*Assocs. v. Nichols*, 551 F. Supp. 2d 704, 710 (N.D. Ill. 2008) (finding that the misappropriation

of a trade secret cannot constitute damage under the CFAA because, "such conduct alone

can[not] show 'impairment to the integrity or availability of data, a program, a system, or

information'") (quoting 18 U.S.C. § 1030(8)). Instead, Plaintiff alleges losses exclusively. [13]

The plain text of § 1030(g) reflects both that Congress understood "damage" and "loss"

as distinct harms and that it intended to apply the injury-discovery limitation to the former only.

The relevant portion of § 1030(g) reads:

> Any person who suffers *damage or loss* by reason of a violation of
> this section may maintain a civil action against the violator to obtain
> compensatory damages and injunctive relief or other equitable
> relief. . . . No action may be brought under this subsection unless
> such action is begun within 2 years of the date of the act complained
> of or the date of the discovery of the *damage*. . . .

18 U.S.C. § 1030(g) (emphasis added). "[W]here Congress includes particular language in one

section of a statute but omits it in another section of the same Act, it is generally presumed that

Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Bates v.*

*United States*, 522 U.S. 23, 29-30 (1997) (quoting *Russello v. United States*, 464 U.S. 16, 23

(1983)). Here, within the same *subsection*, Congress conferred a private right of action for those

who suffer either damage *or* loss, but conferred the injury-discovery limitation only upon the

discovery of damage. 18 U.S.C. § 1030(g). Courts "ordinarily resist reading words or elements

into a statute that do not appear on its face," *Bates*, 522 U.S. at 24, and Plaintiff does not offer

---

[13] Compare, for instance, the allegations of monetary loss here with the allegations of damage to data in *Int'l Airport Ctrs., L.L.C. v. Citrin*, 440 F.3d 418, 418-19 (7th Cir. 2006) (recognizing a secure-erasure program designed to write over data, thus permanently preventing recovery of such data, as a program intended to cause damage under the CFAA).

convincing reasons to find otherwise.[14] The plain text of § 1030(g) forecloses KS+A's argument that the injury-discovery limitation should be extended to include the discovery of loss. It was well within Congress' power to include a separate two-year limitation for the discovery of loss. The text of the CFAA reflects that Congress declined to do so, and so will I.

The decision to limit the scope of the injury-discovery limitation in § 1030(g) to the discovery of damage also comports with the CFAA's purpose. As stated above, the CFAA is primarily a criminal statute. *See Motorola*, 2009 U.S. Dist. LEXIS 10668, at *7-8. "The statute was not meant to cover the disloyal employee who walks off with confidential information. Rather, the statutory purpose is to punish trespassers and hackers." *Am. Family Mut. Ins. Co. v. Rickman*, 554 F. Supp. 2d 766, 771 (N.D. Ohio 2008) (dismissing CFAA claim against disloyal employee who misappropriated employer's confidential information). Losses are monetary harms attenuated from the underlying concern of the Act: damage to data. Extending the scope of liability by extending the CFAA's injury-discovery limitation to include a two-year discovery of loss limitation attenuates liability under the Act to its breaking point.

### b. Equitable Tolling

I also decline to apply equitable tolling to Plaintiff's claim. Equitable tolling is an extraordinary remedy that is "rarely granted." *See Jones v. Hulick*, 449 F.3d 784, 789 (7th Cir. 2006); *Bensman v. United States Forest Serv.*, 408 F.3d 945, 964 (7th Cir. 2005) (declining to

---

[14] Although Plaintiff is correct in arguing that § 1030(g) does not require damage for a CFAA claim to arise, *see Motorola*, 2009 U.S. Dist. LEXIS 10668, at *14-*15 (collecting cases and agreeing with courts deciding that CFAA claims require either damage, loss, or both to be viable), 18 U.S.C. § 1030(g) ("Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief."), that does not compel a finding that the injury-discovery rule ought to apply to discovery of loss. Further, *College Pharm., Inc. v. Ruth*, 2006 U.S. Dist. LEXIS 90681, at *6-7 (D. Colo. Dec. 15, 2006), the lone case KS+A cites in support of its proposition that the injury-discovery limitation should be extended to include discovery of loss, adds little weight to Plaintiff's argument. In denying Defendant's motion to dismiss the plaintiff's CFAA claim as time-barred, the *College Pharmacy* court offered no analysis beyond bare recognition that "the CFAA has a two-year statute of limitations." *Id*. at *6.

apply equitable tolling and adding that "[e]quitable tolling is a doctrine used sparingly, reserved for those situations in which extraordinary circumstances prevent a party from filing on time"). No extraordinary circumstances are alleged in this case.

Additionally, applying the doctrine of equitable tolling would effectively apply a discovery of loss limitation in this case. As discussed above, the plain text of the statute and its purpose counsels otherwise, and little authority exists to support the application of equitable tolling to delay the CFAA's two-year limitation period.

### c. Questions of Fact Remain Regarding When the Allegedly Violating Access Took Place

As discussed *supra*, the pleadings do not make clear when Kim accessed KS+A's protected computers. Indeed, Plaintiff does not know the date that Kim allegedly accessed its computer system. Pl.'s Resp. to Def.'s Mot. to Dismiss 2d Am. Compl. (Doc. 52) 9 n.4. The allegedly violating access may have occurred at any point during a span of approximately four years, some segment of which falls within the two-year period prior to the March 14, 2008, commencement of this suit. Thus, it is possible that the impermissible action about which KS+A complains occurred within the two-year limitation period required by § 1030(g). The factual record needs to be cultivated regarding (1) whether Kim had access to KS+A's protected computers after he left KS+A and (2) if so, when the action about which KS+A complains took place. [15]

At the earliest, Kim could have committed the violating access beginning April 15, 2002, when he started working for KS+A (although this is unlikely, given that the plaintiff alleges the

---

[15] If Kim did not have access to KS+A's protected computers subsequent to his leaving KS+A, then the allegedly violating access would have had to have taken place prior to April 12, 2004, which would place it beyond the scope of the two-year limitation period required § 1030(g).

impermissible access occurred while Kim was Cordogan's agent, 2d Am. Compl. ¶ 71).

Conversely, it is possible that the impermissible access occurred as recently as the point in 2006

at which Kim's employment with Cordogan ceased.  *See* Pl.'s Resp. to Def.'s Mot. to Dismiss 2d

Am. Compl. (Doc. 52) 9 n.4; Def.'s Memo. of Law in Supp. of Mot. to Dismiss 2d Am. Compl.

(Doc. 45) 3.  The pleadings do not indicate when in 2006 Kim left Cordogan.  If Kim had access

to KS+A's protected computers as a Cordogan agent *after* March 14, 2006, then KS+A might be

able to demonstrate impermissible access within the two-year limitation period.

Accordingly, because Plaintiff cannot proceed with its CFAA claim under a discovery-of-

loss theory, the claim will survive summary judgment only if KS+A can prove that the violating

action took place within two years of the commencement of this suit.  Presently, though, because

there exists a set of facts Plaintiff might prove that would entitle it to relief, Defendants' motion

to dismiss the CFAA claim as time-barred is denied.

### C. Preemption of State and Common Law Claims for Fraud, Deceptive Trade Practices, and Unfair Competition

In Counts III, IV, and V, KS+A claims fraud, deceptive trade practices, and unfair

competition under state and common law causes of action.  In its motion to dismiss, Cordogan

argues that all three claims are preempted by 17 U.S.C. § 301(a) of the Copyright Act because

they are claims equivalent to those covered by KS+A's copyright infringement claim.  KS+A

responds that all three claims should not be dismissed because they are qualitatively different

from copyright infringement.  For the following reasons, I grant Cordogan's motion to dismiss

Counts III, IV, and V as preempted.

The Copyright Act expressly preempts legal or equitable rights under state and common

law if such rights are equivalent to any of the exclusive rights within or excluded by the general

scope of copyright as specified by § 106. 17 U.S.C. § 301(a). However, "activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106" are excepted from preemption. 17 U.S.C. § 301(b)(3). In the Seventh Circuit, preemption occurs under a two-prong test when (1) the work in which the right is asserted is fixed in tangible form and falls within the subject matter of copyright, and (2) the rights claimed are equivalent to the exclusive rights or the lack of such rights as determined by § 106 of the Copyright Act. *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 674 (7th Cir. 1986); *Reinke & Assoc. Architects Inc. v. Cluxton*, 2003 U.S. Dist. LEXIS 3987, at *5; *Marobie-FL, Inc. v. National Ass'n of Fire and Equipment Distributors and Northwest Nexus, Inc.*, 983 F. Supp. 1167, 1180 (N.D. Ill. 1997). Neither party disputes that the specifications and drawings at issue satisfy the first prong.

Instead, the parties disagree as to whether Plaintiff's state and common law claims satisfy the second prong of the preemption test. "A right under state law is 'equivalent' to one of the rights within the general scope of copyright if it is violated by the exercise of any of the rights set forth in § 106, in other words, if it 'is infringed by the mere act of reproduction, performance, distribution or display.' 'To avoid preemption, the state claim must incorporate an extra element that changes the nature of the action so that it is qualitatively different from a copyright infringement claim.'" *Reinke*, 2003 U.S. Dist. LEXIS 3987, at *6 (quoting *Marobie-FL*, 983 F. Supp. at 1180) (internal citations omitted). KS+A argues that each of its three state and common law counts satisfy this requirement by asserting some form of deception or confusion in addition to Cordogan's alleged copying. Plaintiff argues that it pled the extra elements requisite to qualitatively change the nature of its claims by alleging that: (1) by affixing their seal to the allegedly infringing drawings and specifications, Defendants falsely represented that they

19

possessed sufficient skill and expertise to produce such works; (2) Defendants' misrepresentations have deceived the public, including members of the relevant trade and industry; and (3) Defendants' misrepresentations have created a likelihood of confusion with respect to the appearance of an affiliation, connection, or association between KS+A and Cordogan.

Yet KS+A cannot demonstrate that these extra elements sufficiently change the nature of its claims. In each of its claims, Plaintiff argues that the harm it suffered occurred as a result of Defendants' alleged misappropriation of its copyrighted works. In this way, Plaintiff's fraud, deceptive trade practices, and unfair competition claims are premised merely on various theories of "reverse passing off."[16] Although passing off claims avoid 17 U.S.C. § 301 preemption, reverse passing off claims do not. *Reinke*, 2003 U.S. Dist. LEXIS 3987, at *7-*8; *FASA Corp. v. Playmates Toys, Inc.*, 869 F. Supp. 1334, 1361-64 (N.D. Ill. 1994).

As in *Reinke*, Plaintiff here has alleged extra elements beyond those required for copyright infringement. *Reinke*, 2003 U.S. Dist. LEXIS 3987, at *7. However, also similar to *Reinke*, "plaintiff['s] allegations derive from nothing more than 'the inherent misrepresentation that accompanies the unauthorized copying and distribution of another's copyrighted work,'" which is simply "not enough" to avoid preemption. *Id.* (quoting *Marobie-FL*, 983 F. Supp. at 1180). Accordingly, Counts III, IV, and V are dismissed. [17]

---

[16] "Passing off . . . occurs when a producer misrepresents his own goods or services as someone else's. Reverse passing off, as its name implies, is the opposite: The producer misrepresents someone else's goods or services as his own." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1 (2003) (internal citations omitted).

[17] Dismissal of Counts III, IV, and V on preemption grounds moots discussion of Cordogan's arguments that (1) KS+A does not state a cause of action under the Consumer Fraud Act and (2) KS+A's allegations do not support a claim under the Deceptive Trade Practices Act or for unfair competition.

### D. Contract Claims

Defendants argue that KS+A's breach of contract (Count VI) and tortious interference with contract (Count VII) claims should be dismissed, asserting that the contract that resulted from the exit interview between Kluber and Kim lacks consideration and is thus unenforceable. Because Plaintiff has sufficiently pled its claims and questions of fact remain regarding the contract's consideration, I deny Defendants' motion to dismiss at this stage in the litigation.

Defendants' allegation that the exit interview contract lacks consideration is an affirmative defense to Plaintiff's claims in Counts VI and VII. *See Siegel v. General Star Mgmt. Co.*, 2007 U.S. Dist. LEXIS 31083, at *7-*8 (N.D. Ill. Apr. 26, 2007) (explaining that lack of consideration is an affirmative defense that is not appropriately considered at the motion to dismiss stage). "[C]omplaints need not allege facts that tend to defeat affirmative defenses. The right question is whether it is possible to imagine proof of the critical facts consistent with the allegations actually in the complaint." *United States Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 628 (7th Cir. 2003). Here, Plaintiff pleads that it conferred consideration upon Kim by forgiving certain of his debts to KS+A. 2d Am. Compl. ¶ 78. Although these remitted expenses do not seem to appear in the actual exit interview contract, the factual record needs to be cultivated to determine the nature of these forgiven obligations and their role in the exit interview negotiations. "Plaintiff may yet develop a body of facts to support his claim that there was a valid contract. Defendant's affirmative defense that consideration was lacking is therefore neither so impenetrable or ironclad as to warrant dismissal before a more complete record has been developed." *Siegel*, 2007 U.S. Dist. LEXIS 31083, at *8. Accordingly, Defendants' motion to dismiss the contract claims is denied.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part, and Plaintiff's claims exist as follows: (1) the copyright infringement claim in Count I remains; (2) the CFAA claim in Count II survives the motion to dismiss so that the factual record can be developed to determine whether Kim's alleged unauthorized access took place within the two-year limitation period required by § 1030(g); (3) the state and common law consumer fraud claim, deceptive trade practices claim, and unfair competition claim in Counts III, IV, and V are dismissed as preempted by § 301 of the Copyright Act; (4) the common law breach of contract claim and tortious interference with contract claim in Counts VI and VII survive dismissal so that the parties can cultivate facts regarding the element of consideration in the exit interview contract.

ENTER:

James B. Zagel
United States District Judge

DATE: February 25, 2009